**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 96-4177

Frederick Douglas Kneibert,      \*
                                   \*

        Plaintiff - Appellant,     \*

                                   \* Appeal from the United States
     v.                       \* District Court for the
                                   \* Western District of Missouri.

Thomson Newspapers, Michigan     \*
Inc., doing business as               \*
The Sedalia Democrat; Randall      \*
Shields; Freedom Communications,  \*
Inc.; Freedom Newspapers, Inc.,    \*
                                   \*

        Defendants - Appellees.   \*

_____

Submitted:  June 12, 1997
Filed:  November 6, 1997

_____

Before BOWMAN, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

    Appellant Frederick Douglas Kneibert filed this lawsuit against his former employers, appellees Thomson Newspapers, Inc. ("Thomson"), Freedom Communications, Inc., and Freedom Newspapers, Inc. ("Freedom"), as well as his former supervisor Randall Shields, in his individual capacity, claiming that Thomson and Shields demoted him and Freedom later fired him because of his age in violation

of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a) (1994), and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.055.1(1)(a) (1994). Also, Kneibert alleged that Thomson and Shields retaliated against him for filing a charge of discrimination by reprimanding him and threatening termination, and Freedom retaliated against him because of his age discrimination lawsuit pending against his former employer Thomson by terminating him, both in violation of the ADEA, § 623(d) (1994), and the MHRA, § 213.070(2) (1994).

On appellees' motions for summary judgment, the district court granted Shields's motion because individuals may not be held liable under the ADEA or the MHRA. The district court also granted Thomson's and Freedom's motions on the age discrimination claims because Kneibert failed to establish a genuine issue of material fact as to pretext and granted Thomson's and Freedom's motions on the retaliation claims because Kneibert could not demonstrate a causal link between the adverse employment actions and the filing of his charge and suit, respectively. This appeal followed.[1]

Based on our conclusion that Kneibert failed to establish a genuine issue of material fact as to pretext for age discrimination and a causal connection between his filing of a charge and later reprimands, we affirm the district court's judgment for Thomson. However, we reverse the district court's judgment as to Freedom because direct evidence exists of age discrimination sufficient to create a genuine issue of material fact. In addition, Kneibert has established a prima facie case of retaliation by Freedom by showing a causal link between Kneibert's filing suit and his later termination by Freedom that created a genuine issue of material fact regarding pretext for retaliation. Therefore, we also reverse the district court's judgment for Freedom on the retaliation claims and remand this issue for trial.

---

[1]Kneibert does not appeal the summary judgment entered in favor of Shields; thus, the opinion does not address this issue.

# I.  BACKGROUND

Kneibert began working for <u>The Sedalia Democrat</u>, a newspaper based in Sedalia, Missouri, in 1967 as managing editor.  In 1971, Kneibert became the editor and was ultimately accountable for delegating responsibilities within the news department.  In 1986, Thomson purchased the newspaper from Dear Publications, Inc.  In 1993, Shields, age forty-two at this time, became the publisher of the newspaper for Thomson.  As publisher, Shields had overall responsibility for all departments and was charged with ensuring that the newspaper was profitable through increased circulation.

Upon arriving at the newspaper, Shields expressed his concerns to Kneibert about Kneibert's job performance.  Specifically, Shields's concerns included the newspaper's editorial quality and the existence of a competing weekly newspaper as indications that Kneibert was not performing his job properly.  Shields repeated his dissatisfaction with Kneibert's performance on various occasions.  In early 1994, Thomson sent Bob Gallagher, a consultant, to review the newspaper and to help Shields with these editorial problems.  Gallagher concluded that the newspaper was outdated, unaggressive, and an unappealing product under Kneibert's direction.

On July 12, 1994, Kneibert received a performance evaluation review from Shields.  In the evaluation, Shields highlighted four specific performance problems:  (1) Kneibert had  below average organizational skills; (2) he was not a "team player"; (3) a negative tone permeated the news product; and (4) Kneibert's personal views were reflected in the paper.  Specifically, Shields was unhappy with the manner in which the call-in feature, a feature that included transcribed public comments, was edited under Kneibert's supervision.  Shields discussed his dissatisfaction with this feature over several months and eventually issued written guidelines for Kneibert and the other editors to follow.  Nonetheless, Shields's dissatisfaction with this feature continued.  In addition, Shields  discovered that Kneibert sent a letter on newspaper letterhead to United States Senator Danforth purporting to reflect the editorial policy of the

newspaper. Although both Shields and Kneibert were in charge of formulating the newspaper's editorial policy, Kneibert failed to discuss the letter with Shields before mailing it. Furthermore, Shields repeatedly admonished Kneibert for not following Shields's express directive to emphasize local as opposed to national stories and for not following instructions regarding the format of the editorial page.

In December 1994, Shields officially reassigned Kneibert, who was then fifty-eight years old, from newspaper editor to a newly created "senior editor" position. As senior editor, Kneibert had responsibility for editing the editorial page, writing a few editorials and one column a week. Roger Morton, age forty-five at this time, replaced Kneibert as the newspaper editor. Morton also had problems with Kneibert's performance such as his poor editing skills, substandard page design, and failure to follow scheduling procedures. In addition to these general performance problems, Kneibert violated specific Thomson policies by running an unattributed story without first attempting to encourage the source to be identified, by running the story without allowing Morton to view it before publication, and by writing a column suggesting an economic boycott.

In March 1995, Kneibert filed a charge of discrimination against Thomson and Shields with the Missouri Commission on Human Rights, alleging that his recent demotion was based on his age. In June 1995, Kneibert filed suit against Thomson and Shields, claiming age discrimination and retaliation regarding his demotion to "senior editor" and the continued criticism of his job performance.

In October 1995, Freedom purchased the newspaper from Thomson. Frank Lyon, age fifty at this time, became the newspaper's publisher. Kneibert continued to work as the senior editor. Shortly after the sale to Freedom, Lyon discovered a file maintained by Shields regarding Kneibert's performance. The file contained memos detailing Kneibert's publication of an unattributed story, his endorsement of an economic boycott, the paper's formal written policy on issues such as abortion and

euthanasia and Kneibert's disagreement with that policy, and copies of front pages that illustrated the newspaper's international and national emphasis and lack of local news.

After investigating community business owners' and citizens' input and willingness to commit advertising dollars to the newspaper, Lyon discovered that several members of the business community indicated that Kneibert was one of the reasons that they did not advertise in or support the newspaper. Upon review of the newspaper's organizational structure, Lyon became concerned about the existence of the "senior editor" position because Freedom does not recognize this position at any of its other newspapers. Kneibert also acknowledged that this title is not commonly used in the newspaper business.

Before eliminating the "senior editor" position, Lyon decided to investigate further whether Kneibert was performing at an acceptable level. Morton expressed concern to Lyon about Kneibert's job performance. Lyon requested that Morton gather information from the other editors before any decisions would be made regarding Kneibert's employment. The three editors wrote written responses to Lyon that expressed several specific concerns such as Kneibert's failure to work as a team with the other employees, lack of computer skills, substandard editorial page designs, reluctance to cover local news, lack of organizational skills, sloppy editing, and general failure to contribute to the newspaper at an acceptable level.

On November 3, 1995, Lyon met with Kneibert to discuss his continued employment. Lyon allegedly told Kneibert that the newspaper did not have use for a "senior editor" position and offered Kneibert the option of resigning with a severance package. Kneibert stated in his deposition that during this conversation, Lyon said "[w]hat I need down there is three young editors." Kneibert App. at 100. Kneibert then resigned and accepted the severance package.

On November 8, 1995, Deborah Spencer, a Sedalia citizen, called the newspaper to express concerns about some changes in the format that had occurred. Spencer's call was directed to Tony Brown, the news editor. Upon learning that Kneibert no longer worked at the newspaper, Spencer asked Brown about the reasons behind Kneibert's termination. Spencer testified that Brown said "I can assure you that he was not terminated because of his ability or his quality of work but because of a [sic] litigation that he is involved in." Kneibert App. at 326. Brown had worked at the newspaper since 1988 and was in a position to know about the quality of Kneibert's work. In addition, Brown was one of the editors from whom Lyon solicited information in the decision to terminate Kneibert.

Kneibert then filed an amended complaint which added age and retaliation charges against Freedom. The district court granted both appellees' motions for summary judgment on both the age and retaliation claims. The district court held that Kneibert failed to establish a genuine issue of material fact as to pretext and failed to establish a causal link between Kneibert's demotion and termination and his filing of a discrimination claim.

On appeal, Kneibert asserts that he presented the district court with direct evidence of Freedom's discriminatory motives regarding his age as well as direct evidence that further negated both appellees' stated justifications for their actions against him. In addition, Kneibert claims that direct evidence established that Freedom retaliated against him for suing the newspaper and that evidence existed showing that Kneibert's charge played a central role in the events leading to the reprimands and threats of discharge by Thomson and ultimate termination by Freedom. Thus, Kneibert argues that the district court erred in granting summary judgment for Thomson and Freedom on the age discrimination claims because the record showed that a genuine issue of material fact existed regarding whether Thomson and Freedom established that they, respectively, demoted and discharged Kneibert for legitimate, non-discriminatory reasons. Kneibert also contends that the district court erred in granting summary

-6-

judgment for Thomson and Freedom on the retaliation claims because the record showed that a genuine issue of material fact existed regarding whether the appellees established that there was no causal link between Kneibert's exercise of protected activities and their respective decisions to demote and terminate him. In the alternative, Kneibert argues that he presented sufficient evidence to establish a prima facie case of age discrimination and retaliation and show that appellees' proffered reasons were pretextual which, thereby, provided submissible age discrimination and retaliation claims.

## II. DISCUSSION

We review de novo a grant of summary judgment. The standard we apply is the same as the district court applied: whether the record shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. See Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1331 (8th Cir. 1996); Fed. R. Civ. P. 56(c). We construe the factual record[2] and all reasonable inferences from the record in the light most favorable to the party opposing summary judgment. See Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995).

### A. *The Age Discrimination Claims*

We first address Kneibert's age discrimination claims against Thomson and Freedom. We apply the same analysis in reviewing age discrimination claims brought

---

[2]Thomson argues that Kneibert's verified response does not comply with Fed. R. Civ. P. 56 and Local Rule 13(G) and, therefore, we should disregard Kneibert's verified response and admit Thomson's Statement of Uncontested Facts. Instead, we have chosen to base our decision on the totality of the evidence based upon our independent review of the entire record on appeal.

under the ADEA and the MHRA.[3]  See Banks v. City of Independence, Mo., 21 F.3d 809, 810 (8th Cir. 1994).  The ADEA prohibits an employer from discharging "any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The ADEA protects individuals that are at least forty years old.  See 29 U.S.C. § 631.  The core issue in an ADEA disparate-treatment claim is whether the employer intentionally discriminated against the plaintiff based upon the plaintiff's age.  See Rothmeier, 85 F.3d at 1331.

Two methods exist by which a plaintiff can attempt to prove intentional discrimination.  First, the plaintiff may present direct evidence of employment discrimination based on age.  When an employee produces direct evidence that an illegitimate criterion such as age "played a motivating part in [the] employment decision," Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989), the burden-shifting standards of Price Waterhouse apply.  As such, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account." Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir. 1991) (quoting Price Waterhouse, 490 U.S. at 258).

Second, the plaintiff can rely on the three-stage order of proof and presumptions and satisfy his burden of proof using circumstantial evidence.  See generally  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-12 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-04 (1973).  At the first stage, the plaintiff bears the burden of

---

[3]The MHRA is interpreted to mirror federal law including the ADEA.  Therefore, this Court's analysis applies to both Kneibert's ADEA claims and MHRA claims.  See Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994).

establishing a <u>prima facie</u> case of discrimination.[4]  <u>See</u> <u>Burdine</u>, 450 U.S. at 252-53. The <u>prima facie</u> case creates a presumption of unlawful discrimination.  <u>See</u> <u>id.</u> at 254. The employer, at the second stage, has the obligation to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action.  <u>Id.</u> at 253. Provided the employer meets this burden of production, the presumption of unlawful discrimination drops from the case.  <u>See</u> <u>id.</u> at 255 n.10.  Then, the plaintiff has the burden, at the third stage, to show that the employer's proffered reason is merely a pretext for discrimination.  <u>See</u> <u>id.</u> at 253.  At all times, the plaintiff retains the burden of persuading the fact finder that intentional discrimination motivated the adverse employment action.  <u>See</u> <u>id.</u>

In the context of an age discrimination case, we recently had the opportunity to clarify our position regarding whether "pretext-only" evidence is enough for a plaintiff to withstand a summary judgment motion in <u>Rothmeier</u>, 85 F.3d at 1335-37.  We announced as the rule in this Circuit that an age-discrimination plaintiff can avoid summary judgment only if "the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision."  <u>Id.</u> at 1336-37; <u>see also</u> <u>Ryther v. KARE 11</u>, 108 F.3d 832, 837-38 (Lay,

---

[4]The four basic elements of a <u>prima facie</u> case are:

(1) that the plaintiff is within a protected age group, (2) that the plaintiff met applicable job qualifications, (3) that despite these qualifications, the plaintiff was respectively demoted and discharged, and (4) that the employer did not take such action against nonmembers of the protected class.

<u>See</u> <u>Williams v. Valentec Kisco, Inc.</u>, 964 F.2d 723, 726 n.2 (8th Cir. 1992), <u>cert. denied</u>, 506 U.S. 1014 (1992).

majority) and 848 (Loken, dissenting) (8th Cir. 1997) (en banc), <u>cert. denied</u>, 117 S.Ct. 2510 (1997) (adopting <u>Rothmeier</u> as the rule of this Circuit).

Turning to the present case, Kneibert asserts that direct evidence exists of Freedom's discriminatory motives that negates both Freedom's and Thomson's stated justifications for their respective actions against Kneibert. As such, Kneibert argues that the district court erred in applying the <u>McDonnell Douglas</u> as opposed to the <u>Price Waterhouse</u> analysis on the age and retaliation claims against Thomson and Freedom. Kneibert contends that two statements indicate that his age and filing of a discrimination claim motivated the adverse employment actions or, in the alternative, reveal that the articulated reasons for demoting and firing him were pretextual under <u>McDonnell Douglas</u>. The first statement apparently occurred when Lyon told Kneibert that he was terminated. Kneibert claims that Lyon said that Lyon "had no use for a senior editor" and, instead, needed "three young editors" in the news department. Kneibert App. at 100. The second statement allegedly transpired when Spencer called the newspaper and spoke with news editor Brown regarding, among other topics, Kneibert's termination. Spencer claims that Brown told her that "I can assure you that he was not terminated because of his ability or his quality of work but because of a [sic] litigation that he is involved in." Kneibert App. at 326.

In determining whether the <u>Price Waterhouse</u> analysis applies, it is necessary to first define "direct evidence" which is sufficient to satisfy the <u>Price Waterhouse</u> threshold. <u>Price Waterhouse</u> defines "direct evidence" in the negative to exclude "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." <u>Price Waterhouse</u>, 490 U.S. at 277 (O'Connor, J., concurring); <u>accord</u> <u>Beshears</u>, 930 F.2d at 1354. However, direct evidence may include employer remarks that "reflect a discriminatory attitude," <u>Beshears</u>, 930 F.2d at 1354 (quotation omitted), or that demonstrate a "discriminatory animus in the decisional process." <u>Id.</u>

-10-

Based upon our review of the case law and viewing the evidence in the light most favorable to the nonmoving party, we conclude that Kneibert did present direct evidence regarding his age discrimination claims against Freedom. The first statement occurred in the context of the adverse employment decision, Kneibert's termination by Freedom, and was made by the primary decisionmaker, Lyon. See id. Thus, this statement constitutes more than a stray remark in the workplace and qualifies as direct evidence of age discrimination by Freedom. However, this alleged statement of Lyon's occurred *after* Thomson sold the newspaper to Freedom, and no evidence reveals that Thomson participated in the decision to terminate Kneibert. Thus, this direct evidence does not apply to Thomson.

On the other hand, we conclude that the second statement, allegedly made by Brown to Spencer, does not constitute "direct evidence." Brown possessed neither supervisory nor decisionmaking authority for Freedom. Despite Brown's memorandum to Lyon that criticized Kneibert's job performance, Brown does not qualify as the "decisionmaker" in Kneibert's discharge. Brown's opinions represented only one of many factors that Lyon considered in making the decision to discharge Kneibert. Brown did not make any decision regarding anyone's employment with Freedom nor did he have any discussions with Lyon regarding Lyon's final decision to terminate Kneibert. Moreover, Brown had no authority to discuss personnel issues or, specifically, Kneibert's termination, with the public because Morton instructed the staff to direct all questions regarding the termination to Lyon. Therefore, since Brown was not an "individual[] closely involved in employment decisions," id., this statement does not qualify as "direct evidence" of age discrimination or retaliation to require applying the Price Waterhouse analysis on the retaliation claims against Freedom or Thomson.[5]

_____

[5]As previously discussed, Brown's alleged statement also occurred *after* Thomson sold the newspaper to Freedom and referred to *Freedom's* reasons for terminating Kneibert. Therefore, this statement does not shed light on Thomson's alleged discriminatory motives regarding Kneibert's demotion. For this reason, we also

However, because the first statement constitutes direct evidence of age discrimination by Freedom and creates a genuine issue of material fact as to Freedom's discriminatory animus in the decisional process, we reverse and remand for trial on Kneibert's age discrimination claims against Freedom.

Since Kneibert has produced direct evidence relating only to his age discrimination claims against Freedom, we will apply the McDonnell Douglas three-stage order of proof and presumptions on the remainder of Kneibert's claims against Thomson and Freedom. Viewing the evidence in the light most favorable to the nonmoving party, we find that Kneibert met his initial burden by establishing a prima facie case of age discrimination against Thomson. "The burden of establishing a prima facie case of disparate treatment is not onerous." Burdine, 450 U.S. at 253. Here, (1) Kneibert, age fifty-eight, was within the protected class; (2) his 1993 and 1994 bonuses from Thomson, newspaper awards received under Kneibert's leadership, and a University of Missouri School of Journalism professor's statements regarding Kneibert's good reputation among his peers establish that Kneibert was meeting his employer's legitimate employment expectations; (3) Thomson demoted him to senior editor; and (4) Thomson replaced Kneibert with a younger editor. In the second stage, Thomson offered Kneibert's failure to improve the newspaper's quality and his poor performance level as legitimate nondiscriminatory reasons for his demotion to senior editor. At the third stage, the burden shifted to Kneibert to offer evidence showing that these reasons given by Thomson were a pretext for age discrimination.

Kneibert argues that, by presenting sufficient evidence to establish his prima facie case, he showed that summary judgment was improper. In particular, the second element of Kneibert's prima facie case, satisfactory job performance, was the same question of fact as appellees' articulated justification for their adverse employment actions, poor job performance. Kneibert contends that, by satisfying his burden of

reject Brown's statement as direct evidence as applied to Thomson.

-12-

showing that he met the second element, he necessarily showed that the appellees' asserted defense of poor job performance was pretextual. However, we recently rejected this same argument in Rothmeier, 85 F.3d at 1333. "[P]roof that the defendant's articulated explanation is false or incorrect does not, standing alone, entitle the plaintiff to [summary] judgment; instead, the showing must be that the explanation is a pretext *for* discrimination." Id. at 1334 (quotation and citation omitted); accord Ryther, 108 F.3d at 837 (Lay, majority) and 848 (Loken, dissenting). To establish pretext, the plaintiff must show the reason is both false and that discrimination was the real reason.[6] See Id. at 837 and 838 n.5 (citations omitted).

Having carefully reviewed the record, we conclude that Kneibert presented neither direct evidence of age discrimination nor sufficient circumstantial evidence for a reasonable fact finder to infer that Kneibert's age actually motivated Thomson's decision to demote him. Undoubtedly, problems existed between Kneibert and Shields, but those problems concerned their business relationship as opposed to Kneibert's age. "Federal courts do not sit as a super-personnel department that

---

[6]The Ryther court more fully explained:

In sum, when the employer produces a nondiscriminatory reason for its actions, the prima facie case no longer creates a legal presumption of unlawful discrimination. The elements of the prima facie case remain, however, and if they are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may *permit* the jury to find for the plaintiff. This is not to say that, for the plaintiff to succeed, simply proving pretext is necessarily enough. *We emphasize that evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of age discrimination.*

Id. at 837 (emphasis added). Here, Kneibert must set forth sufficient evidence of pretext so that a trier of fact could *reasonably* infer that age discrimination motivated the adverse employment action.

reexamines an entity's business decisions."  Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994) (citations and internal quotations omitted).  Kneibert cannot show that Thomson lied about his performance or the reasons behind his demotion and that these reasons constituted a pretext for discrimination.  For a year prior to his demotion, Kneibert received repeated warnings about his performance and the need to improve the newspaper's quality.  Significantly, the only evidence Kneibert cites as causing him to believe that Thomson demoted him because of his age was Shields's alleged comment that Kneibert "was making too much money."  Kneibert App. at 97.  However, evidence that an employer takes an adverse employment action against an employee due to that employee's higher salary does not necessarily support an inference of age discrimination.  See Bialas v. Greyhound Lines, Inc., 59 F.3d 759, 763 (8th Cir. 1995).  As Kneibert can not establish a connection between his demotion and his age, he has no actionable age discrimination claims against Thomson.  As such, the district court correctly granted Thomson summary judgment on Kneibert's age discrimination claims.

## B.  *The Retaliation Claims*

We next turn to Kneibert's retaliation claims against Thomson and Freedom.  The ADEA prohibits an employer from discriminating against an employee because the employee opposed a practice made unlawful by the ADEA.  See 29 U.S.C. § 623(d).  To establish a prima facie case of retaliation under the ADEA and the MHRA,[7] Kneibert must establish that:  (1) he participated in a protected activity; (2) an adverse employment action was taken against him; and (3) a causal connection exists between the two events.  See Wiehoff v. GTE Directories Corp., 61 F.3d 588, 597-98 (8th Cir. 1995) (citations omitted).  The employee need only show that the retaliatory motive

---

[7]Again, this Court's analysis applies to both Kneibert's ADEA claims and MHRA claims of retaliation as the MHRA is interpreted to mirror federal law.  See Tart, 31 F.3d at 671.

was "a contributing factor" as opposed to the sole reason for the adverse employment action.  Id. at 598.  Then, the burden of production shifts to the employer to establish a legitimate, nondiscriminatory reason for the adverse action.  Upon so doing, the employee has the burden to prove that the reason constitutes a pretext for retaliation.  See Maness v. Star-Kist Foods, Inc., 7 F.3d 704, 707 (8th Cir. 1993),  cert. denied, 512 U.S. 1207 (1994).

In the present case, the district court found that Kneibert failed to establish a causal link between his discrimination claims and the adverse employment actions taken against him by Thomson and Freedom.  Kneibert contends that Thomson retaliated against him for filing his age discrimination charge by falsely alleging that Kneibert failed to properly exercise his editorial duties, increasing their reprimands of his performance, threatening to terminate him, and, upon learning of his lawsuit, conspiring with Freedom to terminate him.

Upon examining the record, we conclude that Kneibert failed to produce evidence to establish a causal connection between the filing of his charge and Thomson's adverse employment actions against him.  In fact, Kneibert admitted in his deposition that the only evidence of retaliation by Thomson was the two memoranda he received from Shields threatening Kneibert's dismissal and that, before the filing of his complaint, Shields had never threatened him with dismissal.   However, Kneibert received repeated reprimands from Shields for his performance problems *before* Kneibert filed the charge.  *After* the filing of his charge, Kneibert continued to receive reprimands for the same problems he exhibited before the charge.  Kneibert's future with Thomson was deemed "uncertain" in July, 1994--well in advance of the filing of his charge on March 22, 1995. The mere sequential relationship between the filing of Kneibert's charge and the increasing seriousness of the reprimands is insufficient to establish causality.  See Valdez v. Mercy Hosp., 961 F.2d 1401, 1403 (8th Cir. 1992).  Simply filing a discrimination charge does not "clothe the complainant with immunity for past and present inadequacies, [and] unsatisfactory performance . . . ."  Jackson v.

-15-

St. Joseph State Hosp., 840 F.2d 1387, 1391 (8th Cir. 1988), cert. denied, 488 U.S. 892 (1988).

Moreover, as we discussed previously, Brown's alleged statement to Spencer that Kneibert was terminated because of pending litigation does not apply to Thomson. This alleged conversation occurred *after* Thomson sold the newspaper to Freedom and does not support the contention that Thomson agreed to "paper" Kneibert's file to allow Freedom to terminate him at a later date. Significantly, Kneibert concedes that he did not present any facts that Thomson conspired with Freedom to terminate Kneibert because of his age. To survive Thomson's motion for summary judgment, Kneibert must provide sufficient, probative evidence which would permit a fact finder to rule in his favor as opposed to engaging in "mere speculation, conjecture, or fantasy." Wilson v. International Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995) (citations omitted). Because Kneibert fails to establish the third element (a causal connection) of the prima facie case of retaliation, we affirm the district court's order granting Thomson's motion for summary judgment.

However, regarding Kneibert's retaliation claims against Freedom, we conclude that Kneibert established a prima facie case and created a genuine issue of material fact as to pretext--whether Freedom terminated him for retaliatory as opposed to legitimate, nondiscriminatory reasons. News editor Brown's alleged statement to Spencer, while not qualifying as "direct evidence,"[8] does establish the requisite causal link between Kneibert's pending discrimination suit and Freedom's termination of Kneibert. As news editor, Brown was in a position to know the reasons behind Kneibert's termination by Freedom. Thus, this statement represents more than an individual employee's opinion

---

[8]As we previously addressed, Brown's alleged statement to Spencer does not qualify as direct evidence to warrant the Price Waterhouse analysis regarding the retaliation claims against Freedom. However, this statement constitutes sufficient circumstantial evidence to create a genuine issue of material fact--whether Freedom's legitimate, nondiscriminatory reasons are merely a pretext for retaliatory discharge.

of an action taken by the employer. Cf. Morgan v. Arkansas Gazette, 897 F.2d 945, 950 (8th Cir. 1990) (Unlike the employees in Morgan, Brown, despite not qualifying as a "decisionmaker," did participate--albeit in a small part--in the decisionmaking process.). Brown submitted a memorandum detailing his perception of Kneibert's work performance which Lyon partly relied upon in making the decision to dismiss Kneibert. This evidence from a person involved in the decisionmaking process may be viewed as reflecting the alleged discriminatory attitude of an extent sufficient to permit a jury to infer that this attitude was more likely than not a motivating factor in the employer's decision. See Nelson v. J.C. Penney Co., 75 F.3d 343, 345 (8th Cir. 1996), cert. denied, 117 S. Ct. 61 (1996). While Freedom may dispute Spencer's credibility, "[o]ur task at the summary judgment stage . . . is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." O'Bryan v. KTIV Television, 64 F.3d 1188, 1194 (8th Cir. 1995) (quotations omitted). As such, we reverse the district court's grant of summary judgment for Freedom on the retaliation claims and remand the issue for trial.

## III. CONCLUSION

For the reasons discussed, the order of the district court is affirmed as to Thomson and reversed as to Freedom, and the case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART AND REVERSED IN PART.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting in part.

I dissent from so much of the judgment in this case as affirms the summary judgment in favor of Thomson on the discrimination claim against it, because I believe that in this respect the court has misread our precedents and, in particular, has incorrectly applied the principles that we announced in Ryther v. KARE 11, 108 F.3d

832 (8th Cir. 1997) (en banc), cert. denied, 117 S. Ct. 2510 (1997).  In that case, we held that a plaintiff makes a submissible case in an employment discrimination case if he or she makes out a prima facie case and produces evidence that the employer's proffered legitimate business reason for the adverse employment action complained of was pretextual, unless that evidence is inconsistent with the kind of discrimination that the plaintiff claims motivated the employment action.  Here, Thomson claimed that Mr. Kneibert was discharged for poor job performance, but there is plenty of evidence in this record from which a reasonable person could conclude that he was indeed performing his job satisfactorily.  While the jury, of course, does not have to believe Mr. Kneibert's evidence, it must be given the chance to reject or accept it.

The court notes that Rothmeier held that proof of pretext does not entitle a plaintiff to summary judgment.  That is true, but it is also beside the point.  In this case, Mr. Kneibert is not asserting that he is entitled to summary judgment; he is merely asserting that Thomson is not entitled to summary judgment.  I agree with Mr. Kneibert and therefore respectfully dissent from the court's judgment affirming the summary judgment in favor of Thomson on the discrimination claim against it.  I concur in the judgment in all other respects.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.