**Cathy J. HIETALA, Plaintiff,**

v.

**REAL ESTATE EQUITIES/VILLAGE GREEN, LLC, a foreign limited liability company, Defendant.**

No. Civ. 97–55 ADM/JGL.

United States District Court,
D. Minnesota.

March 2, 1998.

Donald H. Nichols, Steven Andrew Smith, Nichols, Kaster & Anderson, Minneapolis, MN, for Plaintiff.

Donna L. Roback, C. Erik Hawes, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

MONTGOMERY, District Judge.

## I. INTRODUCTION

Plaintiff commenced the above-entitled action on January 8, 1997, seeking relief for alleged pregnancy discrimination under Title VII, 42 U.S.C. § 2000e, and the Minnesota Human Rights Act, Minn.Stat. § 363.03. The matter is currently before the Court pursuant to Defendant's motion for summary judgment of both claims. For the reasons set forth below, Defendant's motion will be denied.

## II. BACKGROUND

Plaintiff Cathy J. Hietala ("Hietala") began working for Defendant Real Estate Equities/Village Green, LLC ("REE") in March 1995 as an assistant site manager at Eden Commons, one of the residential rental properties managed by REE. The manager at Eden Commons at the time was Joe Dziadon ("Dziadon"). In August 1996,[1] Dziadon left REE to work for another company. Hietala acted as interim manager while Nancy Manders ("Manders"), REE's Area Director, interviewed applicants to fill the manager position. In late-August, Manders hired Wendy Stone ("Stone") to take over as manager at Eden Commons.

In early-September, Hietala told Manders that she was pregnant. Hietala Dep. at 10; Manders Dep. at 41. During their conversation, Hietala alleges that Manders commented, "maybe this is not the best business to be in when you have small children running around." Hietala Dep. at 8–10; Borders Dep. at 26–27. Hietala alleges that Manders made similar comments with respect to her pregnancy throughout September.

Stone took over the managerial duties at Eden Commons in mid-September, at which time Hietala resumed her assistant manager duties. Almost immediately, problems arose between Hietala and Stone. Stone claims that Hietala was hostile and rude towards her, used foul language around the office, and failed to give Stone faxes and phone messages. Stone Dep. at 13–15, 37–38. One of Hietala's co-workers, Tamara Borders ("Borders"), testified that Heitala hurt morale in

1. All of the events relevant to this lawsuit took place in 1996.

the office and "made it difficult" for Stone. Borders Dep. at 43–44. At no time, however, did anyone reprimand Hietala for the alleged inappropriate behavior. Stone and Hietala worked together for approximately three days.

On or about September 30, 1996, Manders asked Hietala to meet with her. Manders Dep. at 51; Hietala Dep. at 12. What transpired during the meeting is not exactly clear. Hietala claims that she was "terminated" from her position during the meeting and told to go home for a few days while Manders "got the paperwork together." Hietala Dep. at 12–14. Hietala also claims that when she asked Manders why she was being terminated, Manders said, "I just don't want to be a part of adding stress to the baby ... [t]his job is too stressful" and that she would "feel better" if Hietala went home to "rest and take care of the baby." Smith Aff., Exh. D.

Manders' recollection of the meeting is very different. She claims that she simply told Hietala to take a few days off while she reviewed the situation between Hietala and Stone. Manders Dep. at 51. Both parties agree that following the meeting Hietala went home, then later the same day, returned to the Eden Commons office to speak with Manders again. After Hietala repeatedly demanded to know whether she was being fired, Manders told her that she did not have a job "today." Manders Dep. at 54. After this second meeting, Hietala filled a box with her belongings and left the office. Hietala Dep. at 23.

Approximately one week later, Manders phoned Hietala and asked her to come in to the Eden Commons office again for another meeting. What transpired at this meeting is hotly contested as well. Hietala claims that the meeting was to finalize the paperwork with respect to her termination, and that Manders wanted her to sign a piece of paper saying she had quit. Hietala Dep. at 23–25. Manders, on the other hand, claims that she set up the meeting in order "to review any areas of concern that we had so that we could move forward." Manders Dep. at 57. Manders also claims that she offered to reinstate Hietala during the meeting. Manders Dep.

at 58. Hietala denies that Manders ever offered to reinstate her. Hietala Dep. at 24. Hietala filed a charge of sex discrimination with the Equal Employment Opportunity Commission on December 20, 1996, and commenced this litigation on January 8, 1997.

## III. DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment of a matter is appropriate when there is no genuine issue as to any material fact and the case may be decided purely on legal grounds. The moving party bears the initial burden of stating grounds for its motion and demonstrating the lack of issues of genuine material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White v. Farrier*, 849 F.2d 322 (8th Cir.1988). It is then incumbent upon the nonmoving party to make a showing on every essential element of the case on which she bears the burden of proof by setting forth specific facts showing there is a genuine issue for trial. *Smith v. Tandy*, 897 F.2d 355, 356 (8th Cir.1990). The nonmoving party may not merely rest on the pleadings. *Celotex*, 477 U.S. at 324. The evidence of the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Eighth Circuit has repeatedly cautioned that summary judgment should seldom be used in cases involving allegations of employment discrimination. *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994); *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990). Summary judgment should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. *Johnson*, 931 F.2d at 1244.

■ Hietala alleges that she was terminated because of her pregnancy in violation of Title VII and the Minnesota Human Rights Act ("WHRA"). Under Title VII, it is unlawful for an employer to discharge "or otherwise discriminate against any individual with respect to [her] compensation, terms,

conditions or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Title VII's prohibition of sex discrimination includes discrimination on the basis of "pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). Likewise, the MHRA deems it an unfair labor practice "for an employer, ... with respect to all employment related purposes, ... not to treat women affected by pregnancy, childbirth, or disabilities related to pregnancy or childbirth, the same as other persons not so affected but who are similar in their ability to work ..." Minn.Stat. § 363.03, subd. 1(5). Due to the substantial similarities between two statutes, Minnesota state courts apply Title VII principles when analyzing claims under the MHRA. *Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 574 (8th Cir.1997); *Sigurdson v. Isanti County*, 386 N.W.2d 715, 719 (Minn. 1986).

■■■ In order to prevail on her pregnancy discrimination claims, Hietala must show that she was "treated differently because of her pregnancy or a pregnancy-related condition." *Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 435 (8th Cir.1998) (citing *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir.1996)). REE initially argues that it is entitled to summary judgment "because Plaintiff quit her job, rather than being involuntarily terminated." REE Memo. at 1. REE claims that during the first meeting on September 30, Manders merely told Hietala to take a paid leave of absence and then come back to work in a few days. Manders Dep. at 51. Only after Hietala returned to the office and repeatedly inquired as to whether she was "fired" or if she had a job "today," did Manders respond by saying "if you need to go home and say if you have a job today or not, today you don't have a job." Manders Dep. at 54. REE contends that Manders' statement that Hietala did not have a job "today" was simply meant to express the fact that she was being directed to take a short paid leave of absence, rather than being "fired."

In response, Hietala offers three forms of evidence which she believes create a material issue of fact as to whether she was involuntarily terminated. First, Hietala relies upon an employee status form filled out by Manders on October 8, shortly after Hietala alleges she was terminated. Smith Aff. Ex. C. At the top of the form a box labeled "Termination" has been checked. *Id.* Two-thirds of the way down the form is a separate section entitled "Termination:" which contains numerous boxes, two of which are labeled "Voluntary" and "Discharge." *Id.* Neither of these boxes, however, is checked. Instead, a box labeled "Other" is checked, and a handwritten note reads:

> I gave suspension paid to Friday 4th for Cathy to relax and myself to assess the staff and conditions in the office. Time sheet was submitted paying thru 10/4. Please calculate vacation pay. Also include $360 severance pay $100 Bonus and $40 in commissions. Cathy will not return to E/C.

*Id.* Second, Hietala relies upon deposition testimony from her co-worker, Tamara Borders ("Borders"), that on September 30 she heard Manders tell Heitala: "[t]hen you have to consider yourself terminated." Borders Dep. at 29. Finally, Hietala claims that during the September 30 meeting, Manders told her "basically you're terminated." Hietala Dep. at 13. Heitala testified at her deposition that Manders "told me to go home, take a few days off while she got the paperwork together, she didn't know how the procedures [for terminating an employee] were to be done." *Id.*

The Court concludes that when the evidence is accorded all reasonable inferences in Hietala's favor, a genuine issue of material fact emerges as to whether she was involuntarily terminated. Manders' decision not to check the "Voluntary" box in the "Termination:" section of the employee status form, combined with Manders' alleged statements to Heitala that she did "not have a job today" and was "basically terminated" give rise to a reasonable inference that Hietala was terminated against her will.

The analysis does not, however, end there. In addition to proving that she was terminated, Hietala must show that the termination was on account of her pregnant condition. She may do this either under a "mixed motives" theory or a "pretext" theory. If Plaintiff presents strong enough evidence to show that an illegitimate criterion—such as her pregnancy—was a motivating factor in the employment decision, then the burden shifting formula of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) applies. *Deneen*, 132 F.3d at 435–36; *Kneibert v. Thomson Newspapers, Michigan Inc.*, 129 F.3d 444, 451 (8th Cir.1997); *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 996 F.2d 200, 201 (8th Cir. 1993). Under the *Price Waterhouse* "mixed motives" test, once a plaintiff shows that an employment decision was motivated in part by her pregnancy, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision had the plaintiff not been pregnant. *Geier*, 99 F.3d at 241, *Kneibert*, 129 F.3d at 451.

Alternatively, Plaintiff can rely on the *McDonnell Douglas* "pretext" approach and satisfy her burden of proof using circumstantial evidence. *Geier*, 99 F.3d at 241–242; *Kneibert*, 129 F.3d at 451; *Stacks*, 996 F.2d at 202. The Eighth Circuit summarized this approach as follows:

> Under this test, the burden of persuasion never leaves the plaintiff, but there is a shift in the burden to come forward with evidence: (1) the plaintiff must present a prima facie case consisting of four distinct elements; (2) the defendant must rebut the prima facie case by showing non-discriminatory reasons for termination; and (3) the plaintiff must show the reasons are pretextual.

*Stacks*, 996 F.2d at 202. The district court must evaluate the evidence presented in each case and determine whether to apply the "mixed motives" or "pretext" analysis. *Id.; Price Waterhouse*, 490 U.S. at 247 n. 12, 109 S.Ct. at 1789 n. 12; *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 448 (8th Cir.1993).

Here, Hietala presents sufficient evidence to apply the *Price Waterhouse* analysis. Hietala relies upon numerous statements made by Manders to support the claim that her pregnancy was a motivating factor in REE's decision to terminate her. Hietala informed Manders that she was pregnant during a discussion the two had on September 3. Hietala Dep. at 9. During the same discussion, Hietala claims that Manders told her "maybe this is not the best business to be in when you have small children running around." Hietala Dep. at 8–10. Hietala also asserts that Manders made the following comments during September 1996:(1) Manders told Hietala that she "should be home with [her] children;" (2) Manders told Hietala that the "property was putting too much stress on the baby" and "I [Manders] feel like I'm adding stress to the baby;" (3) Manders directed Hietala to "take a few days off" to "take care of the baby;" and (4) Manders told Hietala, during a discussion about overtime, "I know you're just bubbling with emotion," that Hietala's "hormones are running wild," and that Manders felt bad because these reactions were "hard on the baby." Hietala Dep. at 26, 36; Smith Aff.Ex. D; Heitala Aff. at ¶ 2. Finally, Hietala alleges that when she asked Manders the reason for her termination on September 30, Manders replied, "I just don't want to be a part of adding stress to the baby. This job is too stressful." Smith Aff .Ex. D.

In light of the alleged comments by Manders, there is a genuine issue of material fact as to whether Hietala's pregnancy was a motivating factor in REE's decision to terminate her. Courts have held that such comments by a decision maker suffice " 'to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision' to take the adverse employment action." *Deneen*, 132 F.3d at 436 (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir.1997)); *Beshears v. Asbill*, 930 F.2d 1348, 1353 (8th Cir.1991) ("evidence of actions or remarks of the employer that reflect a discriminatory attitude" and "[c]omments which demonstrate a discriminatory animus in the decisional process" suffice to prove illegitimate criteria were a motivating factor). The Eighth Circuit has found comments much

further removed from the decisional process than the ones alleged here sufficient to support an inference that an illegitimate criterion was a motivating factor in an employment decision. In *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444 (8th Cir.1993), the court held that corporate documents which emphasized youth as a positive factor and were authored by one of two persons who participated in a decision to discharge an older worker supported the giving of a *Price Waterhouse* instruction to the jury. *Id.* at 449.

Having concluded that Hietala's evidence creates a genuine issue of material fact as to REE's motivation in terminating her, the burden shifts to REE to prove by a preponderance of the evidence that its decision would have been the same absent the discriminatory motive. Although REE presents evidence that Hietala exhibited questionable behavior towards the new Eden Commons property manager, Wendy Stone, during the few days that they worked together, there is insufficient evidence to grant summary judgment on that basis alone. Hietala was never reprimanded for any alleged improper or unprofessional behavior, and there is no documented disciplinary evidence in her employment file. In light of the short time period Hietala worked alongside Stone (three days) and the timing of her termination in relation to Manders' alleged comments, a rational factfinder could conclude that REE would not have terminated Hietala were it not for her pregnancy. Accordingly, REE's motion for summary judgment is denied.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

Defendant's Motion for Summary Judgment is **DENIED.**