Kellie **MEIER**, Plaintiff,

v.

**NOBLE HOSPITALITY, INC.**, Defendant.

No. 4–00–CV–90652.

United States District Court, S.D. Iowa, Central Division.

Dec. 31, 2001.

Thomas M. Werner, Des Moines, IA, Jerry Jackson, West Des Moines, IA, for plaintiff.

Thomas W. Foley, Des Moines, IA, Kathryn A. Mrkonich, Minneapolis, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

The Plaintiff, Ms. Meier, filed this lawsuit for pregnancy discrimination under Title VII and the Iowa Civil Rights Act ("ICRA") on October 26th, 2000 in the Iowa District Court of Polk County. On November 29th the Defendant, Noble Hospitality, Inc. ("Noble") removed the case to this Court. Noble now moves for summary judgment and for the foregoing reasons, the motion is denied.

### I. Facts

Ms. Meier was hired as the Food and Beverage Supervisor at a Holiday Inn hotel owned by Noble in April 1999. In her position, Ms. Meier was responsible for supervising food service, training staff, maintaining supplies, and overseeing the catering, restaurant, and bar functions of the hotel. The position paid $9 an hour. One month after she was hired, Ms. Meier informed Chris Bell, the hotel's general manager, that she was pregnant. Mr. Bell told Ms. Meier that he was excited for her and that he would attempt to accommodate any medical restrictions so that she could remain in her position.

In late June or early July of 1999, Ms. Meier informed Mr. Bell that her physician had placed some medical restrictions upon her, specifically that she should not lift over 20 pounds and not work more than 8 hours per day. On July 15th, 1999, Ms. Meier and Mr. Bell met to discuss Ms. Meier's responsibilities and performance. A memo was drafted regarding what was discussed during that meeting. Although it noted that her position was structured

as a working position that required helping the food service staff, the memo made no mention of Ms. Meier's physical ability to perform her duties. The memo addressed Ms. Meier's hours in the following manner: "you get your 40 hrs, or the employee gets theirs ... Coverage: Be here when you need to be. Be gone when you do not. There are many days you will need to split your shifts."

Around the time of Mr. Bell's memo, Ms. Meier began experiencing some bleeding related to her pregnancy and her doctor instructed her to cut her hours back for a few weeks and adhere to the 8 hour restriction. As a consequence of this and Mr. Bell's memo, Ms. Meier began cutting back her hours and splitting her shifts.

In August, 1999, Mr. Bell hired an assistant General Manager named Stephen Wilkins. Shortly after beginning, Ms. Meier claims Mr. Wilkins stated that "a woman's place is in the home" during a workplace conversation with her.

On September 2nd, 1999, Mr. Bell and Mr. Wilkins met with Ms. Meier to inform her that they were demoting her from her position as Food and Beverage Supervisor to the position of part-time server, which paid $7 an hour with tips. Ms. Meier claims she also received tips in her supervisor position. During that meeting, Ms. Meier claims Mr. Wilkins stated that "there would be more opportunity for [her] after [her] baby was born."

Ms. Meier also claims that Mr. Bell stated that it was Mr. Wilkins' department and that he was able to make decisions for that department. Noble has since claimed that Mr. Bell was solely responsible for the decision, and in his affidavit, Mr. Bell stated that he was "solely responsible for the recruitment, hiring, and termination of su-

pervisory and management employees at the Hotel." On the other hand, when asked in interrogatories "who made the decision to demote the complainant," and "who made the decision to reduce complainant's pay," Noble gave the names of both Mr. Bell and Mr. Wilkins.

On September 4th, 1999, Ms. Meier accepted a position as an "on-call" server with the hotel. Ms. Meier was able to find other full-time employment and the arrangement as an "on-call" server did not subsequently work out.[1]

## II. Summary Judgment Standard

The purpose of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Summary judgment "allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to [conserve] scarce judicial resources." *Id.*

The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence nor make credibility determinations, rather the court only

---

1. Ms. Meier left work September 18th and was subsequently terminated. The parties dispute the circumstances of this event and her dismissal, which are in any event irrele- vant to the issue of whether her prior demotion was the result of pregnancy discrimination.

determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

This holds particularly true in employment discrimination cases. "Summary judgment should seldom be granted in discrimination cases because such cases often depend on inferences rather than direct evidence." *Bradley v. Widnall*, 232 F.3d 626, 631–32 (8th Cir.2000)(citing *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994)). "Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the non-moving party." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir. 1998).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *cited in Handeen v. Lemaire*, 112 F.3d 1339, 1345 (8th Cir.1997); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. Fed.R.Civ.P. 56(c), (e); *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis added). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material ... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## III. Discussion

■ Under Title VII, it is unlawful for an employer to discharge "or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" on the basis of gender. 42 U.S.C. § 2000e–2(a)(1). The Pregnancy Discrimination Act (the "PDA") extends the protections of Title VII against discrimination based on "pregnancy, childbirth, or related medical conditions." Under the PDA, "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k); *see Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 435 (8th Cir.1998); *Lang v. Star Herald*, 107 F.3d 1308, 1311 n. 2 (8th Cir.1997). On a pregnancy discrimination claim, the plaintiff has "the burden to show that she was 'treated differently because of her pregnancy' or a pregnancy-related condition." *Deneen*, at 435 (quoting *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir.1996)).

■ An employer may be liable under Title VII if it dismisses an employee on the basis of a mixture of motives, including some legitimate and some illegitimate considerations. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Two years after *Price Waterhouse*, Congress stated in the Civil Rights Act of 1991 that "an unlawful practice is established when an individual dem-

onstrates that pregnancy or pregnancy-related condition 'was a motivating factor for any employment practice even though other factors also motivated the practice.'" *Deneen* at 435 (quoting 42 U.S.C. § 2000e-2(m)). In *Robinson v. Southeastern Pa. Transp. Auth.*, the Third Circuit argued that the Civil Rights Act of 1991 overruled the right of an employer under *Price Waterhouse* "to avoid liability if it could demonstrate that it would have taken the same action in the absence of discriminatory motive." *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 899 n. 8 (3rd Cir.1993) (quoted approvingly by the Eighth Circuit in *Deneen*.)

When a plaintiff cannot offer direct evidence of an improper discriminatory motive, she must establish a prime facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1979). In order to do so, the plaintiff must show that (1) she belonged to a protected class; (2) she was qualified for her position; and (3) she was discharged under circumstances giving rise to an inference of discrimination. *Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 574 (8th Cir.1997). Under this framework, once the plaintiff has established a prime facie case, the employer must then offer a legitimate, nondiscriminatory reason for the adverse action. The burden then shifts back to the plaintiff to show that the offered reason was merely pretext for a discriminatory motive.

Noble argues that Ms. Meier cannot establish a prime facie case of pregnancy discrimination, and that even if she could, she cannot meet her burden to prove that Noble's legitimate, nondiscriminatory reason for her demotion was pretext for discrimination. However, when the Court interprets the facts in a light most favorable to Ms. Meier, as it must, it reaches a different conclusion. The Court questions the very premise that Ms. Meier bears the burden of proving pretext under the *McDonnell Douglas* framework for circumstantial Title VII cases. It appears to the Court that there is direct evidence of discrimination in this case, thus simply requiring Ms. Meier to prove that her demotion was in part motivated by her pregnancy.[2]

■ "Direct evidence is that which demonstrates 'a specific link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision' to take adverse employment action." *Deneen* at 436 (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)). In finding direct evidence of pregnancy discrimination in *Deneen*, the Eighth Circuit noted that remarks about the plaintiff's pregnancy "were made contemporaneously and directly in connection with the adverse employment decision." *Deneen* at 436. See also *Browning v. President Riverboat Casino–Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir.1998) (holding supervisor's reference to plaintiff as "that white boy" was sufficient direct evidence of discriminatory intent for mixed-motives jury instruction); *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir.1993) (holding that corporate documents which emphasized youth as a positive factor and were authored by one of two persons who participated in a decision to discharge an older worker sufficient direct evidence to support a mixed motives jury instruction); *Hietala v. Real Estate*

---

**2.** The Court reaches this conclusion despite the fact that Ms. Meier's attorney failed to argue that the direct evidence in the record obviates the need for the McDonnell Douglas framework that would place the additional burden on the plaintiff to demonstrate that the employer's reasons for taking an adverse action were pretext.

*Equities/Village Green, LLC.,* 998 F.Supp. 1065, 1069 (D.Minn.1998) (holding female supervisor's alleged comments that she did not want to "add stress to the baby" were sufficient direct evidence in a pregnancy discrimination mixed motives case).

■ At the meeting where Ms. Meier was demoted, Ms. Meier alleges that Mr. Wilkins stated that there would be more opportunity for her after her baby was born. Noble argues that the Court should disregard this alleged comment made by Mr. Wilkins because it was a stray remark by a non-decision maker; however, the question of whether Mr. Wilkins is a decision-maker is genuine issue of material fact, and in viewing the facts in a light most favorable to Ms. Meier, the Court must assume that he was a decision-maker. Nor is this assumption at all unfounded. Noble cited Mr. Wilkins as well as Mr. Bell as a decision-maker in its own interrogatory responses. In addition, Ms. Meier testified to Mr. Bell stating that "it was Steve [Wilkins'] department and that he was able to make decisions for that department." [3] Thus, Mr. Wilkins was Ms. Meier's immediate supervisor and allegedly had the authority to hire and fire his subordinates. In *Holmes v. Marriott Corp.,* 831 F.Supp. 691, 708 (S.D.Iowa 1993), then Magistrate Judge Bennett held that the defendant's argument that comments attributed to someone without "full and final authority" to make the adverse employment decision "presents too truncated a view of workplace personnel deci-

sions and is at odds with the reality of today's workplace where important personnel decisions often represent the collective judgment of several individuals." See also *Piantanida v. Wyman Ctr., Inc.,* 927 F.Supp. 1226, 1240 (W.D.Mo.1996) (holding superior's statement a stray remark because another employee was the plaintiff's "immediate supervisor and had the authority to hire and fire ... subordinates"); *Moore v. Alabama State Univ.,* 980 F.Supp. 426 (M.D.Ala.1997).

■ Assuming arguendo, that Mr. Wilkins' remark at the meeting where Ms. Meier was demoted was not sufficiently direct evidence of discrimination, Noble's inability to proffer a credible, legitimate, and nondiscriminatory reason for the demotion further bolsters Ms. Meier's case, either of mixed motives under the *Price Waterhouse* framework, or of pretext under the *McDonnell Douglas* framework. Ms. Meier's restrictions consisted of working no more than eight hours at a time and not lifting 20 pounds.[4] Mr. Bell's own memos to Ms. Meier recommend split shifts and at times reductions in hours.

In *Deneen,* the Eighth Circuit held that a 75 pound lifting requirement was discriminatory because there was evidence that it was not "strictly applied across the board." *Deneen* at 437. In this case, it is not even clear the lifting requirement existed prior or subsequent to Ms. Meier's demotion. Nowhere in any of the materials submitted related to Ms. Meier's supervisor position is there any reference to

---

**3.** Noble also argues that these statements are hearsay evidence. The Court agrees that it would have been vastly preferable for Ms. Meier's attorney to explore in depositions of Mr. Bell and Mr. Wilkins whether these statements were actually made; however, the opportunity will presumably arise again during cross-examination at trial. Furthermore, Mr. Wilkins' statement would seem to fall within the Rule 803(3) hearsay exception for a statement of "the declarant's then existing state of

mind ... such as intent, plan, motive, design ..." under the Federal Rules of Evidence, while Mr. Bell's statement would fall within Rule 801(d)(2), admission by party-opponent.

**4.** Ms. Meier acknowledged during her deposition that her doctor also recommended 16 hours of rest between shifts, but she also claimed that she did not adhere to that restriction and often did not adhere to the 8 hour restriction.

heavy lifting. More importantly, Noble demoted Ms. Meier to a food server position that is no less likely to require lifting than the supervisor position from which she was demoted.

Even as a circumstantial case under the *McDonnell Douglas* framework, Ms. Meier is able to establish a prime facie case under the summary judgment standard. She was pregnant, she met all the established qualifications for her position, and she was demoted under circumstances giving rise to an inference of discrimination, namely, her employer's citation of her pregnancy restrictions. As noted above, Noble's proffered legitimate, nondiscriminatory reasons contradict their own submitted documentary evidence. Furthermore, Mr. Wilkins' statements create a genuine issue of material fact as to whether Noble's reasons were pretextual.

## IV. Order

The defendant's motion for summary judgment is denied.

IT IS SO ORDERED.