**United States Court of Appeals**

FOR THE EIGHTH CIRCUIT

_____

Nos.  96-2802/2846

_____

| | | |
|---|---|---|
| Ruth C. Deneen, | * | |
| | * | |
| Cross-Appellant/Appellee, | * | Appeals from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Northwest Airlines, Inc., a | * | |
| Minnesota | * | |
| corporation, | * | |
| | * | |
| Appellant/Cross-Appellee. | | |

_____

Submitted:  May 22, 1997
                        Filed:  January 6, 1998

_____

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

   A jury awarded Ruth C. Deneen compensatory and punitive damages on her claim of pregnancy discrimination in employment against Northwest Airlines, Inc. (NWA).  NWA sought judgment as a matter of law, which the district court[1] granted in part by striking the jury's award of punitive damages.  NWA appeals, arguing that Mrs. Deneen did not prove unlawful discrimination and that her claims are precluded

---

   [1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

by the Railway Labor Act (RLA), 45 U.S.C. § 151 (1994). Mrs. Deneen cross-appeals the district court's partial grant of judgment as a matter of law, seeking to reinstate the jury's verdict of punitive damages. We affirm.

## I. Background

Viewing the facts in the light most favorable to the jury verdict, Ryther v. Kare 11, 108 F.3d 832, 836 (8th Cir.) (en banc), cert. denied, 117 S. Ct. 2510 (1997), a reasonable jury could have found the following facts. In January 1990, Ruth C. Deneen began working as a customer service agent (CSA) for NWA. In general, CSAs perform three major job functions: ticket counter work, baggage service, and gate service. The job generally requires repetitive lifting of luggage and boxes that average 24 pounds and can exceed 75 pounds, intermittent bending, and standing or walking during most of a shift. The general CSA job description also includes some non-lifting positions and duties, such as coordinating unaccompanied minors, handling the lost and found, processing damage claims, announcing flights, and helping passengers board flights.

In January 1993, NWA laid off Mrs. Deneen as part of a reduction in force. She was pregnant at that time with an expected delivery date in July, and she had informed NWA of her pregnancy. In April, the secretary to Steve Holme, director of ground operations, placed a telephone call to Mrs. Deneen, offering her a temporary part-time CSA position during the busy travel months of June through September 1993. Mrs. Deneen orally accepted the position. The secretary inquired casually about Mrs. Deneen's pregnancy. In late May, another NWA representative informed Mrs. Deneen that she would be working five-hour shifts, beginning on June 9, 1993.

On June 2, 1993, the doctor restricted Mrs. Deneen to 48 hours of bed rest and relaxation due to pregnancy-induced hypertension. Mrs. Deneen's husband, who also worked as a CSA for NWA, took some time off work to be with her. On June 8, 1993, concerned about their family finances, Mr. Deneen called Mr. Holme's office to inquire

about how long a person must be "on the clock" at work to receive earned benefits. (Appellant's App. at 5.) The secretary knew of Mrs. Deneen's pregnancy, and the office apparently knew that Mr. Deneen had taken some leave to be home with his wife. The secretary referred the call to Mr. Holme, who responded that Mrs. Deneen would not be allowed to return to work, "because of her pregnancy complication." (Id. at 6.) Mr. Deneen was surprised that anyone at NWA would even know whether or not Mrs. Deneen had suffered complications. The conversation became heated, and Mr. Holme concluded by stating that Mrs. Deneen could only return to work if she produced a doctor's note verifying her fitness to work.

Mrs. Deneen complied and obtained a doctor's note releasing her to work her five-hour shift with light duty. When she reported to work as scheduled on June 9, 1993, Mrs. Deneen discovered that no time card was prepared for her and her name had been crossed off the work list with a notation by Mark Horvath, the CSA manager, that she was on a medical leave of absence. Neither Mr. Holme nor Mr. Horvath had ever spoken to Mrs. Deneen about her medical condition -- they were acting on an assumption that she had a pregnancy-related complication that would not allow her to perform her job functions.

Mr. Holme and Mr. Horvath met with Mrs. Deneen after she reported to work. Mr. Holme said, "It's been brought to my attention that you are having problems with your pregnancy, and we need you to bring in a note." (Appellant's App. at 47.) She then presented her note along with her own explanation that she could perform most of the job functions, with the exception of lifting bags. She had not previously been aware that she would have to comply with any particular lifting requirements. Mr. Horvath then presented Mrs. Deneen with a letter outlining the physical requirements of the CSA job, including the ability to lift up to 75-pound bags of luggage onto a conveyor belt. Mrs. Deneen said that she never was able to lift 75-pound bags even when she was not pregnant, and she named many CSA duties and job functions that she could perform with her present limitation. Mr. Holme responded, "If I let you come

back now, you would just go out and take your sick leave, and that would be preventing another person from working." (Id. at 49-50.) He told her that she could not come back to work unless she had a doctor's note verifying that she could perform all the listed job functions.

The next day, Mrs. Deneen received a letter notifying her that she was not qualified to return to work because of her medical restriction to light duty. The letter informed her that the decision could be reviewed if her doctor certified her as fit to perform all of the physical aspects of the job. Four months later, after she had delivered her baby and fully recovered from the pregnancy, NWA again called Mrs. Deneen back to work but did not ask if she was pregnant and there is no indication that NWA required any certification that she could lift up to 75 pounds.

Mrs. Deneen brought suit against NWA, alleging that it discriminated against her on the basis of her sex, in violation of 42 U.S.C. § 2000(e)-2(a) (1988), as amended by the Pregnancy Discrimination Act of 1978 (PDA), 42 U.S.C. § 2000e(k) (1988), and on the basis of her disability, in violation of 42 U.S.C. § 12112 (Supp. V 1993) of the Americans with Disabilities Act. She also alleged pendent state law claims of discrimination on the basis of pregnancy and disability under the Minnesota Human Rights Act (MHRA), Minn. Stat. Ann. § 363.03, subd. 1 (West 1991 & Supp. 1997). The district court dismissed Mrs. Deneen's disability claims, concluding that she is not an individual with a disability as defined in either the ADA or the MHRA. NWA moved to dismiss the remaining claims for lack of subject matter jurisdiction, arguing that Mrs. Deneen's discrimination claims were preempted by the Railway Labor Act, but the district court rejected this contention.

The Pregnancy Discrimination Act claim proceeded to trial. The district court concluded as a matter of law that Mrs. Deneen had submitted sufficient direct evidence of discrimination to justify submitting the case to the jury as a mixed-motives case. On this basis, the jury entered a special verdict finding that NWA "did not allow Ruth

Deneen to return from layoff status on June 9, 1993, and that her pregnancy was a motivating factor" in its decision. (Appellant's Adden. at AA4.) The jury also found that NWA would not have made the same decision had she not been pregnant. The jury awarded Mrs. Deneen $3,500 in lost wages, $10,000 for other compensatory damages, and $10,000 in punitive damages.

The district court took the MHRA claims under advisement and ultimately applied the same analysis, noting that the MHRA mirrors the language of the Pregnancy Discrimination Act. The district court found that Mrs. Deneen's pregnancy was a motivating factor in NWA's decision not to allow her to return from layoff status and that NWA would not have required strict compliance with the lifting requirement had she not been pregnant. While NWA asserted that its decision not to allow Mrs. Deneen back to work was based on a concern for her own safety, the district court concluded that such laudable reasons are no longer sufficient to justify an adverse employment action. The district court also found that the proof did not support NWA's assertion that Deneen was not physically able to perform the same work as other employees. The district court adopted the jury's compensatory damage awards, but concluded that an additional damage award would be duplicative. Thus, the court did not award any additional actual damages arising from the state cause of action and declined to award treble the actual damages as allowed by state law. Additionally, the district court declined to award punitive damages under state law.

NWA filed a post-judgment motion for judgment as a matter of law or in the alternative for a new trial. The district court granted this motion in part, striking the jury award of punitive damages in the federal discrimination claim. The district court awarded attorneys' fees to Mrs. Deneen as the prevailing party. NWA appeals the verdict, and Mrs. Deneen cross-appeals the district court's decision to strike the award of punitive damages.

## II. Discussion

### A.  Proof of Discrimination

NWA asserts that the district court erred by not granting its motion for judgment as a matter of law, arguing that Mrs. Deneen failed to prove pregnancy discrimination.  We review de novo the denial of a motion for judgment as a matter of law.  Gardner v. Buerger, 82 F.3d 248, 251 (8th Cir. 1996).  "Judgment as a matter of law is  appropriate only when the nonmoving party fails to present enough evidence to permit a reasonable jury to decide in his [or her] favor."  Id.

Title VII declares it unlawful for an employer to discharge "or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions or privileges of employment" on the basis of the individual's sex.  42 U.S.C. § 2000e-2(a)(1).  As amended by the Pregnancy Discrimination Act, the sex discrimination proscribed by Title VII includes discrimination on the basis of "pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work."  42 U.S.C. § 2000e(k); see Lang v. Star Herald, 107 F.3d 1308, 1311 n.2 (8th Cir.) (explaining purpose and effect of Congress's enactment of the PDA), cert.  denied, 118 S. Ct. 114 (1997).  Thus, to prevail on her pregnancy discrimination claim, Mrs. Deneen had the burden to show that she was "treated differently because of her pregnancy" or a pregnancy-related condition.  Geier v. Medtronic, Inc., 99 F.3d 238, 241 (7th Cir. 1996). Consistent with Title VII, an employer may be held liable for dismissing an employee on the basis of a mixture of motives, including some legitimate and some illegitimate considerations.  See Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  This point has been strengthened by the Civil Rights Act of 1991, which states that an unlawful employment practice is established when an individual demonstrates

that pregnancy or a pregnancy-related condition "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). See Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 899 & n.8 (3d Cir. 1993) (noting the 1991 Civil Rights Act "overrul[ed] that portion of Price Waterhouse that permitted an employer to avoid liability if it could demonstrate that it would have taken the same action in the absence of discriminatory motive").

## 1. Direct Evidence

NWA first challenges the trial judge's conclusion that Mrs. Deneen presented direct evidence of discrimination. Direct evidence is that which demonstrates "a specific link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision" to take the adverse employment action. Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997) (internal quotations omitted). We conclude that the district court was correct in its determination that Mrs. Deneen presented direct evidence of discrimination: Without any real knowledge of a physical limitation, Mr. Holme stated that Mrs. Deneen could not return to work from layoff status without a note from her physician because of her pregnancy-related condition.

NWA contends that "a statement that simply refers to an employee's protected status, but fails to express any bias against the employee because of that status, is not direct evidence" of discrimination. (NWA's Br. at 23.) This principle may apply with regard to the secretary's initial inquiry as to whether Mrs. Deneen was pregnant. There is evidence, however, that NWA did more than merely refer to Mrs. Deneen's pregnant status in this manner. Mr. Holme's initial statement that she could not return to work was expressly based on her pregnancy-related condition, a condition he only assumed to exist, and was made before Mr. Holme knew of any pregnancy-related physical

restrictions. He did not simply refer to her pregnant status but made an adverse employment decision on the basis of his discriminatory judgment about her abilities or her propensity to use earned sick leave benefits. Additionally, the cases cited by NWA in support of its contention that mere reference to a protected status is not direct evidence of discrimination are distinguishable. For example, in Philipp v. ANR Freight Sys., Inc., 61 F.3d 669, 674 (8th Cir. 1995), the plaintiff claimed that one decision maker's occasional reference to him as "the old man" amounted to direct evidence of age discrimination when he was terminated as part of the defendant's reduction in force. We held that these references were nothing more than stray remarks in the workplace, because no evidence linked the remarks to the challenged employment decision. Id. See also Geier, 99 F.3d at 242 ("To be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process."). In the present case, Mr. Holme's remarks about Mrs. Deneen's pregnancy-related complication were made contemporaneously and directly in connection with the adverse employment decision. Her pregnancy-related condition was the reason Mr. Holme took her name off the duty list and refused to permit her to return to work.

We conclude the district court correctly determined that Mrs. Deneen presented direct evidence of discrimination. Based on this conclusion, the district court committed no error by submitting the case to the jury on a mixed motives instruction.

## 2. Lifting Requirement

NWA contends that it prevented Mrs. Deneen from returning to work because she could not satisfy the 75-pound lifting requirement of the CSA job description, not because of a discriminatory motive. It is not unlawful for an employer to discriminate on the basis of sex or pregnancy "in those certain instances" where sex "is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e-2(e)(1). The PDA "does not

create substantive rights to preferential treatment." <u>Lang</u>, 107 F.3d at 1312. On the contrary, the PDA allows "employers [to] treat pregnant women as badly as they treat similarly affected but nonpregnant employees." <u>Troupe v. May Dep't Stores Co.</u>, 20 F.3d 734, 738 (7th Cir. 1994). The opposite, however, is also true -- employers must treat pregnant women as well as they treat similarly affected employees. The PDA does not require an employer to overlook the work restrictions of pregnant women unless the employer overlooks the comparable work restrictions of other employees. <u>Cf. id.</u> (stating, "[t]he PDA requires the employer to ignore an employee's pregnancy, but . . . not her absence from work, unless the employer overlooks the comparable absences of nonpregnant employees").

While NWA's policy of requiring CSAs to be capable of lifting up to 75 pounds is not discriminatory on its face, the evidence before the jury demonstrated that it was not strictly applied across the board. The jury could conclude in this particular case that full compliance was only required of Mrs. Deneen because suspicions arose concerning a pregnancy-related condition. Mr. Holme testified, "I recall asking for a doctor's note because I wanted to find out what she could do," (NWA's App. at 135), but the same was not routinely required of any other NWA employees who had been on layoff status for less than six months. The offensive conduct in this case is not NWA's policy of requiring fitness for duty, but NWA's actions in not permitting her to return to work before it was aware of Mrs. Deneen's actual physical capabilities. NWA did not mention the physical requirements of the job until after Mr. Deneen called to inquire about the use of earned benefits. NWA asserts that managers Holme and Horvath required Mrs. Deneen to bring medical proof of fitness because they "learned that plaintiff was suffering 'pregnancy complications' that interfered with her ability to do the job." (NWA's Br. at 24 n.9.) There was no evidence, however, that they were privy to any such information when they took her name off the duty list. A reasonable jury could conclude that NWA discriminatorily assumed Mrs. Deneen was suffering a condition that would interfere with her job. Furthermore, Mrs. Deneen presented evidence that certain light duty job functions existed within the definition of

the CSA position which she was capable of performing and which other CSAs were allowed to continue performing after they had been medically restricted to light duty work.  Because light duties existed within the CSA position, a jury could reasonably conclude that the 75-pound lifting requirement was not a bona fide occupational qualification within the meaning of the statute and was discriminatorily invoked against Mrs. Deneen in an effort to prevent her from having the opportunity to return to work and exercise her earned sick leave benefits.

### 3.  NWA's Treatment of Other Employees

NWA contends that the district court committed evidentiary error by allowing Mrs. Deneen to introduce evidence of NWA's treatment of other pregnant CSAs.  Aside from her direct proof of discrimination, Mrs. Deneen presented circumstantial evidence also indicating a discriminatory animus on the basis of her pregnancy-related condition.  As already noted, Mrs. Deneen presented the testimony of Sally Goodsell and Sharla Burly, both of whom were CSAs placed on layoff status and recalled while pregnant.  They were not yet restricted to light duty because of their pregnancy at the time they were recalled, but when they became unable to lift bags and requested light duty assignments, NWA accommodated their request.  NWA contends that this evidence was not relevant for two reasons.  First, NWA argues that Mrs. Deneen must compare herself to other nonpregnant employees of similar ability, not other pregnant employees.  Second, NWA argues that Title VII does not require it to accommodate the restrictions of a person being recalled from layoff status.

On the first argument, we acknowledge our statement of the relevant question in a pregnancy discrimination case is whether the employer treated the pregnant plaintiff "differently than nonpregnant employees . . . not whether the [employer] could have made more concessions for [the plaintiff]."  Lang, 107 F.3d at 1313.  This statement of the issue emphasizes that the state of being pregnant is not itself a reason for distinguishing between employees.  Employers must look to the employee's actual

-10-

abilities. A comparison with other pregnant employees in most instances will not give rise to an inference of discrimination on the basis of pregnancy. In this particular case, however, where NWA suspected some pregnancy-related complication on the part of the plaintiff close to the time when she was being recalled (and if she were not recalled, NWA would not have to give her earned sick leave benefits), a showing that the employer gave better treatment to similarly restricted pregnant persons who were already on the clock does support a finding of intentional discrimination. While the comparison group was similarly pregnant, our analysis is unaffected in this particular case because the distinguishing feature is not the pregnancy alone but Mrs. Deneen's pregnancy-related complication which NWA assumed existed before even talking with Mrs. Deneen and which could require her to exercise her earned benefits.

On the second argument, we agree that Title VII does not require NWA to specially accommodate every pregnancy-related physical restriction. See Lang, 107 F.3d at 1312 (emphasizing that the PDA does not require employees to make accommodations for pregnant workers). Where an employer accommodates for some pregnant women restricted to light duty, however, and attempts to strictly apply the rule to deny others their earned benefits upon returning from layoff status, the comparison is relevant to resolving the question of whether the employer engaged in intentional discrimination and whether the physical requirement of the position is a bona fide occupational qualification. We conclude that the comparison in this case constitutes valid circumstantial evidence that NWA engaged in discrimination on the basis of Mrs. Deneen's pregnancy-related condition in an attempt to deny her earned benefits. The district court did not commit evidentiary error.

### 4. Sufficiency of the Evidence

We view the evidence in the light most favorable to the verdict and will not reverse a jury's verdict for insufficient evidence unless "we conclude that no reasonable juror could have returned a verdict for the non-moving party." Ryther, 108

F.3d at 836. The evidence presented at trial and summarized above included testimony from which a reasonable jury could find that Mr. Holme improperly and expressly considered Mrs. Deneen's pregnancy-related complication in placing her on an unrequested medical leave of absence and demanding strict compliance with the lifting requirement when others with a similar restriction were not treated in this manner. We do not question NWA's right to hire or recall only persons who are fit for the job. Mrs. Deneen, however, was not a new hire and she was not treated the same as other persons returning to work from less than six months of layoff status. She was recalled without being required to prove her fitness but then taken off the list and prevented from returning to work on the basis of a pregnancy-related complication that NWA assumed existed and assumed shortly would require the payment of earned benefits. NWA alleges a distinction between Mrs. Deneen, who was under a light duty restriction when she was recalled, and CSAs who were on active duty when they became restricted to light duty. Nonetheless, because she was treated differently from NWA's usual policy for employees on recall status for less than six months, we believe the impact, if any, from this asserted distinction was a question for the jury to consider as it determined the ultimate question of whether NWA intentionally discriminated against Mrs. Deneen on the basis of her pregnancy-related condition. While this may be a close case on the facts, close cases are best left to the jury.

We conclude that there is sufficient evidence from which a reasonable jury could conclude that NWA intentionally discriminated against Mrs. Deneen on the basis of her pregnancy-related medical condition in an attempt to deny her earned benefits. Because the mixed motives analysis was appropriate in this case, we need not address the sufficiency of the proof under the pretext analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

## B. Punitive Damages

On cross appeal, Mrs. Deneen contends that the district court erred by striking the jury's award of punitive damages. Punitive damages may be awarded to a plaintiff under the Civil Rights Act when the plaintiff shows that the defendant engaged in a discriminatory practice "with malice or reckless indifference" to the plaintiff's federally protected rights. 42 U.S.C. § 1981a(b)(1) (Supp. V 1993); see Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 575 (8th Cir. 1997). The district court concluded in this case that there was no evidence to support the jury's grant of punitive damages and granted judgment as a matter of law on this issue. We review de novo the district court's grant of judgment as a matter of law, viewing the facts and resolving any conflicts in the light most favorable to the jury verdict. Varner v. National Super Markets, Inc., 94 F.3d 1209, 1212 (8th Cir. 1996), cert. denied, 117 S. Ct. 946 (1997).

We agree with the district court's conclusion that a punitive damages award is not supported by the evidence presented in this case. In spite of the direct evidence of discrimination Mrs. Deneen presented, NWA maintained that it believed the contract required it to consider her pregnancy-related condition and ensure her fitness for duty before allowing her to return from layoff status. Additionally, Mr. Holme testified that he was concerned about the health of Mrs. Deneen and her baby. While we have found the evidence sufficient for the jury to determine that NWA's actions in this case were illegally discriminatory, there is no evidence of malice or reckless indifference. Accordingly, the district court did not err by striking the jury award of punitive damages.

## C. Preemption

NWA contends that Mrs. Deneen's discrimination claims should have been dismissed for lack of subject matter jurisdiction because, as minor contract disputes, they are preempted by the Railway Labor Act. The Railway Labor Act provides that

-13-

all minor disputes must be resolved in mandatory arbitration before the Railway Labor Board and that federal and state courts lack jurisdiction over such claims.  45 U.S.C. § 151a (1994).  Courts can resolve questions of federal or state law involving labor claims only if the issues do not require the court to construe the collective bargaining agreement.  <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 411 (1988).  The discrimination claims at issue in this case arise independent of the collective bargaining agreement.  Because federal and state law are the source of the claims, not the collective bargaining agreement, the Railway Labor Act does not preempt Mrs. Deneen's discrimination claims.  <u>See Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 256 (1994) (holding RLA does not preempt causes of action to enforce rights independent of the collective bargaining agreement); <u>Taggart v. Trans World Airlines, Inc.</u>, 40 F.3d 269, 274-75 (8th Cir. 1994) (holding state law discrimination claim not preempeted by RLA); <u>Norman v. Missouri Pac. R.R.</u>, 414 F.2d 73, 83 (8th Cir. 1969) (noting Congress did not intend to make railroads immune from Title VII liability for discrimination in employment).

## D.  Attorney Fees and Costs

Mrs. Deneen also contends that she is entitled to receive attorney's fees and costs incurred on appeal.  Title VII provides that the court may, in its discretion, allow the prevailing plaintiff on appeal attorney's fees and the costs of appeal.  42 U.S.C. § 2000e-5(k).  Mrs. Deneen contends that a fee award is necessary because the fees incurred at trial and on appeal will exceed her verdict.  Mrs. Deneen is a prevailing party in NWA's appeal, but she did not prevail on her own cross appeal.  Her counsel should proceed to file her motion for appellate attorney's fees and costs pursuant to 8th Cir. R. 47(c) so that the matter can be considered.

## III.  Conclusion

Accordingly, we affirm the judgment of the district court.

-14-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.