**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 96-4115/97-1120

_____

| | |
|---|---|
| Carolyn A. Coffman, | * |
| | * |
| Cross- | * Appeals from the United States |
| Appellant/Appellee, | * District Court for the |
| | * Western District of Missouri. |
| v. | * |
| | * |
| Tracker Marine, L.P., | * |
| | * |
| Appellant/Cross- | * |
| Appellee. | |

_____

Submitted: November 21, 1997
Filed: April 13, 1998

_____

Before FAGG and HANSEN, Circuit Judges, and PIERSOL,[1] District Judge.

_____

HANSEN, Circuit Judge.

Tracker Marine, L.P., (Tracker Marine) appeals following a jury verdict in favor of Carolyn A. Coffman on her retaliatory constructive discharge claim under Title VII of the Civil Rights Act of 1964, arguing that the district court erred in denying its motion for judgment as a matter of law. Coffman cross-appeals, claiming the district

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

court erred in failing to submit her claim for punitive damages to the jury. We affirm in part, reverse in part, and remand.

## I. Factual and Procedural Background

In 1986, Coffman began working for Tracker Marine, a boat manufacturer, as an accounts payable clerk. She gradually was promoted to new positions until she became the inventory control manager at Tracker Marine's Bolivar, Missouri, plant in January 1991. As part of her negotiations with management regarding the inventory control manager position, Coffman requested that she receive all federal holidays off with pay.[2] The exact nature of the agreement regarding these holidays is unclear, but it appears that, at the very least, the parties reached an informal understanding that Coffman would receive all federal holidays off with pay, and she in fact took all of these holidays off with pay until shortly before she resigned. As inventory control manager, Coffman was responsible for controlling the level and flow of inventory, both raw materials and finished goods, as it moved through the plant. She was also responsible for supervising twenty-five employees.

In May 1992, Coffman made a complaint of sexual harassment to Ann McNew, the personnel representative at the Bolivar plant, against Kenneth Beckler, Coffman's supervisor and the Bolivar plant manager. When Beckler learned of the complaint, he self-reported the harassment claim to Michael Rowland, a vice-president of human resources. Rowland conducted an investigation and reviewed the results with Coffman. Rowland warned Beckler that he was receiving a "final warning" and that termination would result from: (1) another complaint of sexual harassment; (2) any retaliation against Coffman; or (3) any physical contact between Beckler and any employee.

---

[2]Other employees received some federal holidays off, but not Columbus Day, Veterans' Day, Martin Luther King, Jr.'s Birthday, and Presidents' Day.

Following the harassment complaint, according to Coffman, Beckler retaliated against her in various ways. Beckler removed significant job responsibilities and functions from Coffman's position as inventory control manager, including the ordering of important raw materials, supervisory responsibilities in the shipping department, and responsibility for building materials. Coffman claimed that Beckler repeatedly placed his hands into the air and backed away in an exaggerated manner in response to Coffman's presence in the hallway of the plant. Further, Beckler no longer allowed Coffman to take all federal holidays off with pay. Beckler also avoided verbal communication with Coffman and instead used electronic mail. Finally, Beckler excluded Coffman from attendance at management meetings.

Coffman complained to McNew about some of Beckler's behavior that Coffman believed to be retaliatory, and McNew reported these complaints to Rowland. Coffman also told Bill Gilkerson, the maintenance manager, that Beckler was treating her differently after having filed her sexual harassment complaint, and that Beckler was not allowing her to do her job. It is unclear from the record precisely when these conversations took place, although they were before Coffman resigned and after she brought the sexual harassment complaint against Beckler.

On January 19, 1993, Coffman met with Beckler and McNew regarding Coffman's failure to receive paid time off for all federal holidays. Beckler told Coffman she had misunderstood their original agreement and that he did not have authority to allow her to take off all federal holidays. Beckler then told Coffman she could no longer take off all federal holidays. Following this meeting, Coffman met with Rowland and submitted a letter of resignation, setting forth a list of alleged retaliatory actions taken by Beckler. Rowland asked Coffman not to resign and to allow him to investigate the matter and then get back to her.

Following his investigation, Rowland called Coffman and told her that he did not think there had been any retaliation, but that there was a communication problem

between Beckler and Coffman. Rowland informed Coffman that he thought the problem could be resolved through the use of a facilitator. Coffman did not want to use either of the two facilitators that Rowland recommended. Instead, Coffman wanted to use an independent facilitator from outside the company that she would not know. Rowland would not agree to bring in an outside facilitator. Soon thereafter, Beckler gave Coffman a favorable evaluation on a performance review. Shortly after this review, Coffman resigned.

On November 8, 1994, Coffman brought the present action against Tracker Marine, alleging sexual harassment, retaliation for lodging a sexual harassment complaint, and constructive discharge, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a) (1994). Coffman also alleged a violation of the Equal Pay Act, 29 U.S.C. § 206(d). On September 23, 1996, the district court granted summary judgment in favor of Tracker Marine on Coffman's sexual harassment claim, ruling that the conduct complained of was not so "severe and pervasive as to create an objectively hostile work environment," and that Tracker Marine had taken prompt and remedial action reasonably likely to stop the harassment. (Appellant's Supp. App. at 8, 11.) Coffman does not appeal that ruling. The court denied Tracker Marine's summary judgment motion on the retaliation claim, finding Coffman had made out a prima facie case and that there was a jury issue on whether Tracker Marine's proffered legitimate reasons were pretextual. The court also denied Tracker Marine's motion for summary judgment on the constructive discharge claim, ruling "the crux of the constructive discharge claim depends on [the] same factual issues" as the retaliation claim. (Appellant's Supp. App. at 13.) The court further denied summary judgment on the Equal Pay Act claim.

The case proceeded to trial on October 7, 1996. On October 11, 1996, the jury returned a verdict for Tracker Marine on the Equal Pay Act claim and for Coffman on the retaliatory constructive discharge claim. The jury awarded Coffman $15,000 for back pay, $5,000 for emotional distress, and $5,000 for medical expenses. No punitive

-4-

damages were awarded because the court had previously denied Coffman's request to instruct the jury on such damages. Following the verdict, Tracker Marine filed a motion for judgment as a matter of law or, alternatively, for a new trial. The district court denied the motion. Tracker Marine appeals this ruling, and Coffman cross-appeals the failure to instruct the jury on punitive damages.

## II. Analysis

### A. Tracker Marine's Appeal

#### 1. Adverse Employment Action as a Result of the Sexual Harassment Complaint

Tracker Marine argues that the district court erred in denying its motion for a judgment as a matter of law on Coffman's retaliation claim because Coffman presented insufficient evidence that she suffered an adverse employment action as a result of her sexual harassment complaint. We review de novo the district court's denial of Tracker Marine's motion for judgment as a matter of law. Gartman v. Gencorp, Inc., 120 F.3d 127, 129 (8th Cir. 1997). "We view the evidence in the light most favorable to the verdict and will not reverse a jury's verdict for insufficient evidence unless we conclude that no reasonable juror could have returned a verdict" for Coffman on this claim. Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 438 (8th Cir. 1998) (internal quotations omitted).

There are three elements of a prima facie case in a Title VII retaliation claim: (1) the plaintiff engaged in statutorily protected activity; (2) the plaintiff suffered an adverse employment action; and (3) this adverse employment action occurred because the plaintiff engaged in statutorily protected activity. See Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 100 (8th Cir.1995), cert. denied, 116 S. Ct. 1319 (1996). The defendant may then rebut the plaintiff's prima facie case by advancing a legitimate, nonretaliatory reason for the adverse employment action. See Ruby v. Springfield R-12

Pub. Sch. Dist., 76 F.3d 909, 911 (8th Cir.1996). If the defendant makes this showing, the plaintiff must show that the defendant's proffered reason was a pretext for illegal retaliation. Id. Coffman has clearly met the first element—she engaged in statutorily protected activity by making a sexual harassment complaint against Beckler. Tracker Marine contends that there is insufficient evidence to meet the second and third elements.

We first determine whether Coffman suffered an adverse employment action after her harassment complaint. Although "actions short of termination may constitute adverse actions within the meaning of the statute," not everything that makes an employee unhappy is an actionable adverse employment action. Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir. 1997). Instead, the action must have had some materially adverse impact on Coffman's employment terms or conditions to constitute an adverse employment action. See Ledergerber v. Strangler, 122 F.3d 1142, 1144 (8th Cir. 1997).

Our review of the record leads us to conclude that the jury was presented with ample evidence upon which it could find Coffman suffered an adverse employment action. Coffman's claim that she was not permitted to take all the federal holidays off work after she made her harassment complaint is supported by her own testimony and that of a coworker. The denial of these vacation days easily qualifies as an adverse employment action because it was a material change in one of Coffman's existing employment benefits. See id. Based on this action alone, the jury had sufficient evidence to find Coffman suffered an adverse employment action.

There was also evidence to support Coffman's claim that Beckler would back away from her in the hallway in an exaggerated manner, causing embarrassment to Coffman. Both Coffman and others testified about this behavior. Coffman also had her duties at work changed, including the loss of her responsibility for ordering coil and extrusion, important raw materials in the manufacturing of boats at the Bolivar plant.

These ordering duties represented a substantial part of Coffman's job as inventory control manager. When Tracker Marine stripped Coffman of her duties as supervisor of the shipping department, the number of employees she supervised was reduced from twenty-five to eight. Coffman testified that Beckler began to communicate with her more by electronic mail and worked with her less on a one-to-one basis. While Beckler may have done so out of a sense of self-preservation and to provide documentation for his contacts with someone who had charged him with sexual harassment, according to Coffman, these changes in Beckler's communications with her hampered her ability to do her job. There was also evidence that Tracker Marine excluded Coffman from some management meetings that, as inventory control manager, she would have been expected to attend. Taken together, these actions, as well as the denial of vacation time previously discussed, show Coffman's employment was adversely affected in a material way. See Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 564 (8th Cir. 1992) (court looks at combined effect of the employer's actions to determine if there was discrimination).

We next review the record to see if there is sufficient evidence to support the jury's finding that the adverse employment action was the result of Coffman's sexual harassment complaint, again viewing the evidence in the light most favorable to the verdict. Deneen, 132 F.3d at 438. We conclude that there is. The person making the adverse employment decisions, Beckler, was the same person whose behavior had been the subject of Coffman's harassment complaint. There was evidence that Beckler's demeanor and his relationship with Coffman changed after the complaint. His exaggerated reactions to Coffman in the hallway support an inference of hostility towards Coffman in response to her complaint. This evidence could well have been used by the jury to draw an inference that Beckler's actions in changing Coffman's duties and denying her vacation time had been taken in response to the complaint. The timing of Beckler's actions in relation to the harassment complaint, when considered along with the other evidence of retaliatory motive, also supports a reasonable inference that his actions were motivated by the complaint. See O'Bryan v. KTIV

<u>Television</u>, 64 F.3d 1188, 1194-95 (8th Cir. 1995). Finally, the jury easily could have disbelieved Tracker Marine's proffered legitimate reasons for the actions and found they were pretextual.

### 2. Prompt and Appropriate Remedial Action by Tracker Marine

Tracker Marine next claims that there was insufficient evidence to support the jury's finding that it did not take prompt and remedial action to end the retaliation against Coffman. For purposes of this appeal, we assume without deciding that prompt and appropriate remedial action prevents employer liability for a Title VII retaliation claim.[3]

Our review of the record in the light most favorable to the verdict, see <u>Deneen</u>, 132 F.3d at 438, leads us to conclude that there is sufficient evidence to support the jury's finding that Tracker Marine did not take prompt and appropriate remedial action designed to resolve Coffman's retaliation complaint. We first note that this issue involves a fact-based inquiry into whether Tracker Marine's response to Coffman's retaliation complaints was prompt and appropriate, an issue that often must be decided by the jury. See <u>Smith</u>, 109 F.3d at 1265 (noting that the promptness and appropriateness of an employer's response to a Title VII complaint was subject to a factual dispute that should be resolved by the jury). Coffman talked with McNew about the problems she was having with Beckler and told her she thought they were the result of retaliation for the prior harassment complaint. Coffman testified that she cried during these meetings with McNew. Although Coffman did not tell McNew about all of the retaliatory actions, McNew testified that she informed Rowland of the problems

---

[3]Although the parties dispute whether such action prevents employer liability for a retaliation claim, we find it unnecessary to resolve this issue because the jury's finding that Tracker Marine did not take prompt and appropriate remedial action on her retaliation claim is supported by substantial evidence.

-8-

Coffman did report.  Rowland claimed no knowledge of these complaints and took no action to correct the situation.  In deciding which witness to credit, the jury could reasonably conclude that  Rowland had been informed of the complaints and that he ignored them and did not take appropriate action to resolve them.  When Rowland was later confronted with Coffman's letter of resignation, he did take some action.  He investigated the problem, but he concluded the acts were not retaliatory and suggested using a facilitator to solve what he viewed as a communication problem between Coffman and Beckler.  The jury did not have to accept this as an appropriate response, especially since the jury found there had been retaliation rather than merely a communication problem.

### 3. Constructive Discharge

Tracker Marine next argues that the evidence is insufficient to support the jury's finding that Coffman had been constructively discharged. A plaintiff must show more than just a Title VII violation by her employer in order to prove that she has been constructively discharged.  See Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 495 (8th Cir. 1996) (holding that although there was evidence of discrimination by the employer based on race, there was insufficient evidence to support a finding that the employer had constructively discharged the plaintiff).  Thus, even though there is sufficient evidence to support the jury's findings of retaliatory adverse employment action, we must independently examine the evidence to see if it is sufficient to support the jury's finding of constructive discharge.  In so doing, we once again view the record in the light most favorable to the verdict.  Deneen, 132 F.3d at 438.

To establish a claim for constructive discharge, the plaintiff must show that the employer "deliberately create[d] intolerable working conditions with the intention of forcing the [plaintiff] to quit." Tidwell, 93 F.3d at 494 (citing Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir. 1981)). "The plaintiff can satisfy the intent requirement by demonstrating that [she] quit as a reasonably foreseeable consequence

of the employer's discriminatory actions." Id. (citing Hukkanen v. International Union of Operating Eng'rs, 3 F.3d 281, 285 (8th Cir.1993)). The plaintiff must establish that "a reasonable person in her situation would find the working conditions intolerable. " Gartman, 120 F.3d at 130. Thus, the "intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings." Id. (internal quotations and alterations omitted).

We have articulated further principles for use in resolving constructive discharge claims that are relevant to this case. "Dissatisfaction with a work assignment is, as a matter of law, normally not so intolerable as to be a basis for constructive discharge." Tidwell, 93 F.3d at 496 (citing Carter v. Ball, 33 F.3d 450, 459 (4th Cir.1994) ("Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.")). Also, we have stressed that "[t]o act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly." Id. at 494 (citing West v. Marion Merrell Dow, Inc., 54 F.3d 493, 498 (8th Cir.1995)). If an employee quits without giving her employer a reasonable chance to work out a problem, then she has not been constructively discharged. Id. The rationale underlying these rules is that "'society and the policies underlying Title VII will be best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships.'" West, 54 F.3d at 498 (quoting Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 66 (5th Cir. 1980)); see also Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1015 (7th Cir. 1997) ("unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress.").

Our review of the evidence convinces us that Coffman failed to present sufficient evidence for a jury to find that a reasonable person in Coffman's position would have found that the conditions of her employment were intolerable. Coffman was not an employee who felt she had no place to turn when faced with unlawful discrimination.

She knew that she could report any allegations of retaliatory action directly to McNew and up the chain of responsibility to Rowland. When Coffman threatened to quit, Rowland tried to prevent her resignation and attempted to solve the problems. Although his proposed solution may not have been prompt and appropriate when viewed through the 20/20 lens of hindsight, Coffman had an obligation to not jump to the conclusion that the attempt would not work and that her only reasonable option was to quit. See Tidwell, 93 F.3d at 494. Nor did she have the right to dictate how Tracker Marine would try to solve the problem by insisting on an "outside" facilitator. This obligation is particularly appropriate here because Rowland had taken corrective action on Coffman's prior sexual harassment complaint, and Coffman had little reason to believe that her retaliation complaint would not lead to similar corrective action by Tracker Marine. Her most recent performance review given to her by the retaliator had been favorable. There is also no evidence that the retaliatory acts were intended by Tracker Marine to force Coffman to quit, or that it was reasonably foreseeable that she would quit as a consequence of the retaliation. See id.; Bunny Bread, 646 F.2d at 1256. The evidence here all points the other way—when Coffman threatened to quit, Tracker Marine tried to take action to prevent her resignation.

"What is missing from this catalogue of evidence is any indication that [Coffman] faced objectively intolerable working conditions. While the conditions under which [Coffman] worked may have been unpleasant and tinged with [retaliatory] acts, they do not create an [objectively] intolerable atmosphere" that forced Coffman to resign. Tidwell, 93 F.3d at 497. We hold that a jury could not reasonably conclude that Coffman was constructively discharged. The district court erred in not granting Tracker Marine's judgment as a matter of law on the constructive discharge component of Coffman's retaliation claim.

Because there is sufficient evidence for the jury's finding that Tracker Marine violated Title VII by taking adverse employment actions against Coffman as a result of her prior harassment complaint and insufficient evidence for Coffman's constructive

-11-

discharge claim, we must determine whether this affects the damages awarded to Coffman.  Pursuant to the instructions and verdict director, the jury, after finding Coffman had been constructively discharged, awarded damages to Coffman by attributing specific amounts to the categories of back pay, emotional distress, and medical treatment.[4]  The jury awarded Coffman $15,000 in back pay, $5,000 for emotional distress, and $5,000 for medical treatment.  Alternatively, the instructions and verdict director provided that if the jury found that Tracker Marine retaliated against Coffman but had not constructively discharged her, then the jury should only award damages for emotional distress and medical treatment.

Under these circumstances, we can uphold a part of the jury's damage award and avoid the necessity of a new trial.  We have concluded that the evidence supports the jury finding that Coffman was retaliated against but does not support a finding that she was constructively discharged.  Under this scenario, the jury instructions expressly required the jury to award damages to Coffman for the categories of emotional distress and medical treatment.  We know the amount of damages the jury attributed to these two categories, and we affirm those determinations.  Thus, we remand to the district court for the entry of an order reflecting that judgment is entered in favor of Coffman on the retaliation claim only and reducing the damage award by $15,000, the amount attributed by the jury to back pay. In all other respects, we affirm the judgment of the district court on Tracker Marine's appeal.

### B. Coffman's Cross-appeal

Coffman argues on cross-appeal that the district court erred in not submitting her claim for punitive damages to the jury.  We reject this argument.

---

[4]Neither party challenges these instructions or the verdict director.

Under Title VII, punitive damages may be awarded if an employer is found to have engaged in unlawful employment discrimination "with malice or with reckless indifference to the federally protected rights" of the plaintiff. 42 U.S.C. § 1981a(b)(1).  The evidence here does not support a finding that Tracker Marine acted with reckless indifference to the federally protected rights of Coffman.  Although the jury found Tracker Marine did not respond promptly and appropriately to Coffman's retaliatory complaints, Tracker Marine did respond later and attempted to solve what it perceived as the problem.  This is not a case where an employer repeatedly ignored complaints about unlawful discrimination.  Cf. Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 576 (8th Cir. 1997).  There is simply an inadequate showing of malice or reckless indifference by Tracker Marine toward Coffman's Title VII rights to have required the submission of a punitive damages instruction to the jury.

### III.  Conclusion

Accordingly, we reverse and remand this case to the district court for the entry of an order reflecting that judgment is entered in favor of Coffman on the retaliation claim and reducing the damage award by $15,000. In all other respects, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-