BYE, Circuit Judge,
dissenting.
The Court holds Union Pacific’s exclusion of prescription contraception coverage does not violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17 (Title VII), as amended by the Pregnancy Discrimination Act of 1978(PDA). Because I agree with how the district court framed the discrimination inquiry, and therefore agree with its conclusion that Union Pacific’s policy discriminates against women under Title VII, as amended by the PDA, I respectfully dissent.
The Court ends with the following pronouncement in footnote five: “Union Pacific provides an equal policy for its female and male employees.” Ante at 944. This is a good place to begin. When one looks at the medical effect[6] of Union Pacific’s failure to provide insurance coverage for prescription contraception, the inequality of coverage is clear. This failure only medically affects females, as they bear all of the health consequences of unplanned pregnancies. An insurance policy providing comprehensive coverage for preventative medical care, including coverage for preventative prescription drugs used exclusively by males, but fails to cover prescription contraception used exclusively by females, can hardly be called equal. It just isn’t so.
The Court begins its analysis by finding the district court erred in confining its inquiry to Union Pacific’s exclusion of coverage for prescription contraception used by women because its policy also excludes coverage for non-prescription contraception coverage (condoms) and surgical procedures to prevent male fertility (vasectomies). The district court did not err in limiting its inquiry to prescription contraception. That its policy does not provide coverage for condoms is unsurprising— Union Pacific has not identified any health insurance policy which would provide coverage for non-prescription, contraceptive devices available in drug stores and gas stations nationwide. As for vasectomies, even if we were to look at its exclusion of coverage for vasectomies, the policy nonetheless discriminates against females. When a policy excludes coverage for vasectomies, the medical effect of this exclusion is born entirely by women, as the record demonstrates women are the only gender which can become pregnant.
The Court holds Union Pacific’s failure to cover prescription contraception is not covered by the PDA because prescription contraception use occurs prior to pregnancy. Because such reasoning is at odds with the Supreme Court’s construction of the PDA, I respectfully disagree. First, it must be noted Title VII is a remedial, civil rights statute and, as such, it should be broadly construed. Allen v. Entergy Corp., Inc., 193 F.3d 1010, 1020 (8th Cir.1999). Title VII provides in relevant part:
It shall be an unlawful employment practice for an employer — (1) ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, be *946 cause of such individual’s ... sex ...; or (2) to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual’s ... sex....
42 U.S.C. § 2000e-2(a). Congress enacted the PDA to amend the definition of sex in Title VII. As such, the PDA provides in relevant part:
The terms “because of sex” or “on the basis of sex” include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes....
42 U.S.C. § 2000e(k).
While the plain language of the PDA does not specifically include pre-pregnancy conditions, there is some indication Congress intended the act to cover pre-preg-nancy discrimination. Congress used the phrase “related medical conditions.” The word “related” indicates the PDA covers more than mere pregnancy. In this case, the district court relied on the second clause of the PDA which is drafted even more broadly than the first, covering “women affected by pregnancy, childbirth, or related medical conditions.” In re Union Pac. R.R. Employment Practices Litig., 378 F.Supp.2d 1139, 1143 (D.Neb.2005) (emphasis added) (“Because the PDA plainly states that its protection from discrimination, including discrimination in ‘receipt of benefits under fringe benefit programs,’ applies to ‘women affected by pregnancy and not merely to pregnant women, the clear language of the statute requires that [Union Pacific’s] Plans treat the risk of pregnancy no less favorably than the Plans treat other similar health risks.”). Finally, as noted by certain members of Congress, writing as amici on behalf of Standridge and Phillips, the first clause of the PDA specifically states: “The terms ‘because of sex’ or ‘on the basis of sex’ include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions.” Brief for Certain Members of the Congress as Amicus Curiae 4. The use of the phrase “include, but are not limited to” mandates a broad reading of the PDA because it suggests Congress was being illustrative rather than exclusive with the list following the phrase. See Fed. Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 100, 62 S.Ct. 1, 86 L.Ed. 65 (1941) (“[T]he term ‘including’ is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.”). The PDA’s legislative history also promotes a broad construction of the act to include pre-pregnancy. Representative Ronald Sarasin explained the PDA gives a woman “the right ... to be financially and legally protected before, during, and after her pregnancy.” 124 Cong. Rec. 38574 (daily ed. October 14, 1978) (statement of Rep. Sarasin, a manager of the House version of the PDA) (emphasis added).
Even if Congress did not intend the PDA to cover pre-pregnancy discrimination, the Supreme Court ostensibly broadened the scope of the PDA to include pre-pregnancy discrimination in International Union, United Automobile, Aerospace & Agricultural Implement Workers, UAW v. Johnson Controls, Inc., 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991). The Court found classifying employees on the basis of childbearing capacity, whether or not they were already pregnant, “must be regarded, for Title VII purposes, in the same light as explicit sex discrimination.” Id. at 199, 111 S.Ct. 1196. In Johnson *947 Controls, a battery manufacturer enforced a gender-based, fetal-protection policy excluding fertile women (women who were pregnant or capable of becoming pregnant) from working in jobs where they would be exposed to lead. The bias was clear, as the policy at issue excluded only women. Id. at 197, 111 S.Ct. 1196. The Court used the PDA to bolster its holding the policy discriminated on its face as it “explicitly classifies on the basis of potential for pregnancy.” The choice to treat all “female employees as potentially pregnant” was discriminatory. Id. at 199, 111 S.Ct. 1196.
This court addressed the scope of the first clause of the PDA in Krauel v. Iowa Methodist Medical Center, 95 F.3d 674, 679-80 (8th Cir.1996). In Krauel, we held an insurance policy excluding coverage for infertility treatments did not violate the PDA, as treatment for infertility is not treatment of a medical condition related to pregnancy or childbirth. Because “[p]reg-nancy and childbirth, which occur after conception, are strikingly different from infertility, which prevents conception,” we held “the District Court properly concluded that infertility is outside of the PDA’s protection because it is not pregnancy, childbirth, or a related medical condition.” Id. We explicitly acknowledged however, under Johnson Controls, “[potential pregnancy, unlike infertility, is a medical condition that is sex-related because only women can become pregnant.” Id. at 680. Because infertility, unlike potential pregnancy, is gender-neutral, it could not form the basis of a PDA claim. Id.
Krauel undoubtedly limited the scope of the PDA. The Court suggests Krauel drew the line at pregnancy, and held the PDA does not apply to infertility treatments because infertility, by its definition, occurs prior to pregnancy. In my assessment, Krauel cannot draw such a bright' line because of Johnson Controls. This court has, after Krauel, at least implicitly indicated it will not draw the line of PDA coverage at pregnancy. See Walsh v. Nat’l Computer Sys., 332 F.3d 1150, 1160 (8th Cir.2003) (“[Plaintiff] asserts that she was discriminated against ... because she is a woman who had been pregnant, had taken a maternity leave, and might become pregnant again. ‘Potential pregnancy ... is a medical condition that is sex-related because only women can become pregnant.’ ” (emphasis added) (quoting Krauel, 95 F.3d at 680)). Other circuits have followed suit. See Kocak v. Cmty. Health Partners of Ohio, Inc., 400 F.3d 466, 469-70 (6th Cir.2005), cert. denied, 126 S.Ct. 650 (2005) (holding, in light of Johnson Controls, the district court erred in concluding the plaintiff was not protected by the PDA because she was not pregnant when the defendant refused to hire her).
Potential pregnancy, like infertility, by its definition occurs prior to conception. The same can be said for the use of prescription contraception. The reason Krau-el determined the PDA did not apply to an employer’s failure to cover infertility treatments, even in light of Johnson Controls, was because infertility, unlike potential pregnancy, is a gender-neutral affliction. After Krauel, denial of coverage for infertility treatments does not implicate the PDA because infertility affects both men and women. The Court suggests infertility treatments and contraception are both pre-pregnancy and this fact makes the difference. Although both are used prior to conception, when one looks at the medical effect of the denial of insurance coverage, prescription contraception is easily distinguishable from infertility treatments. As the district court aptly notes: “Health plans that deny coverage for contraception, by definition, affect only the health of women. ” In re Union Pac., 378 F.Supp.2d at 1145. With prescription contraception a woman controls her potential *948 pregnancy. Such contraception is necessarily gender-related because it prevents pregnancy only in women. Without contraception, a sexually active, fertile woman is almost certain to become pregnant.[7] Once pregnant, only the woman’s health is affected. Infertility, by contrast, is a word used to describe a number of medical conditions affecting both men and women. When a man or a woman is infertile, he or she is unable to contribute to reproduction as his or her reproductive organs do not function properly. Infertility treatments may correct the medical condition of infertility in both men and women, allowing them to effectively make the necessary contribution to reproduction. Thus, prescription contraception and infertility treatments are like apples and oranges. Although both relate to pregnancy in a general sense, prescription contraception is, unlike fertility treatments, at its very core gender-specific. As such, a PDA claim based on a failure to provide prescription contraception coverage is not foreclosed by Krauel. More importantly, the Court’s holding here — “that contraception is not ‘related to’ pregnancy for PDA purposes because, like infertility treatments, contraception is a treatment that is only indicated prior to pregnancy,” ante at 942, — is inconsistent with Johnson Controls.
In addition to holding the PDA does not apply under Krauel, the Court also holds Union Pacific’s policy does not discriminate against women under Title VII, because the policy excludes contraception coverage for both men and women. Because I agree with the district court’s comparison — between the insurance coverage provided to men and woman for all types of preventative medicine — I also dissent with regard to this holding. Whether something constitutes discrimination under Title VII, as amended by the PDA, is a matter of comparison. “The PDA does not create substantive rights to preferential treatment.” Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 436 (8th Cir.1998) (citation and internal quotation marks omitted). This court has noted quite the contrary: “[T]he PDA allows employers [to] treat pregnant women as badly as they treat similarly affected but nonpregnant employees. The opposite, however, is also true — employers must treat pregnant women as well as they treat similarly affected employees.” Id. at 436-37 (internal citations omitted). “The PDA does not require an employer to overlook the work restrictions of pregnant women unless the employer overlooks the comparable work restrictions of other employees.” Id. at 437. It would follow, in the instant case, the PDA does not require Union Pacific to provide coverage for prescription contraception specifically to prevent pregnancy unless the employer provides comparable coverage to male employees.
What is comparable coverage? The district court determined the proper comparison is between prescription contraception coverage and other preventative coverage. In contrast, the Court concludes the proper comparison is between coverage for female contraception (prescription contraception) and male contraception (condoms and vasectomies). As noted above, I agree with the district court about contraception being a gender-specific, female issue because of the adverse health consequences of an unplanned pregnancy (or even the general health consequences of any pregnancy). As such, I agree the proper com *949 parison is between the preventative health coverage provided to each gender.
The history of the PDA supports the district court’s choice of comparators. The PDA was enacted specifically to overrule the reasoning employed by the majority in General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), and to adopt the reasoning of the Gilbert dissenters. See Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 678-79 & n. 17, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983) (noting the legislative history of the PDA demonstrates Congress viewed the Gilbert dissenters as expressing the true principle and meaning of Title VII when they explained it was facially discriminatory for an employer to offer protection against all risks but for pregnancy and “the appropriate classification was ‘between persons who face a risk of pregnancy and those who do not.’ ”). In Gilbert, the Court refused to require employers to cover pregnancy in their short-term disability plans, noting that without the pregnancy coverage, plans for men and women were equal and covered the same risks. Gilbert, 429 U.S. at 138-40, 97 S.Ct. 401. In his dissent, Justice Stevens argued this was discriminatory because the employer treated absenteeism based on pregnancy differently than all other types of absenteeism. Id. at 161, 97 S.Ct. 401 (Stevens, J., dissenting). Likewise, Justice Brennan explained it was discriminatory for a company to devise “a policy that, but for pregnancy, offers protection for all risks, even those that are ‘unique to’ men or heavily male dominated.” Id. at 160, 97 S.Ct. 401. (Brennan, J., dissenting). Put another way, the Gilbert dissenters recognized, to be equal, a plan would have to cover for the uniquely female risk of pregnancy, although this required giving women additional benefits men would not receive. Under this reasoning, as prescription contraception is a treatment for (or a method to control the occurrence and timing of) the uniquely female condition of potential pregnancy, the exclusion of this coverage in a plan providing other preventative coverage is discriminatory. Union Pacific provides coverage for a wide range of preventative medicines and procedures, including coverage for prescription drugs used exclusively by males to prevent benign prostatic hypertrophy. Union Pacific specifically excludes coverage for prescription contraception when used for a preventative purpose. Under the reasoning of the Gilbert dissenters, as adopted by Congress with the PDA, this is discriminatory.
Women are uniquely and specifically disadvantaged by Union Pacific’s failure to cover prescription contraception. Because I believe such a policy is violative of Title VII, as amended by the PDA, I respectfully dissent. Although the district court’s decision might appear to grant women benefits above and beyond those of men, the PDA requires such benefits be included in an otherwise comprehensive health care plan.

. The logical focus here is on the medical effect of Union Pacific's failure to cover prescription contraception. This case is about health insurance coverage and determining whether such coverage discriminates against women. There is no reason to stray from the bounds of a health paradigm when making this determination.

. As Standridge and Phillips note, without contraception, a woman is likely to become pregnant twelve to fifteen times over the course of her reproductive life, and, in any given year, 85 out of 100 sexually active women of childbearing age will become pregnant.